[No. 29664. *En Banc.* March 7, 1946]

DALIA I. SPENCER, *Appellant,* v. HOMER I. SPENCER, *Respondent.*[1]

*John R. McEwen,* for appellant.

*Neal, Brodie & Trullinger* (*Bynon & Meindl,* of counsel), for respondent.

STEINERT, J.—Plaintiff instituted an action in which, by an amended complaint, she sought a divorce from the defendant, on grounds amounting to cruelty, and further asked that she be awarded all of the property belonging to the parties, together with temporary alimony, attorney's fees,

[1]Reported in 166 P. (2d) 845.

and costs. Defendant answered, denying the material allegations of the complaint and, by cross-complaint, sought a divorce from the plaintiff on the ground of cruelty and, in turn, asked that all of the property of the parties be awarded to him. Upon a trial before the court, findings and conclusions were made and an interlocutory order was entered granting plaintiff a divorce from the defendant, making a property division between the parties, and awarding to the plaintiff an attorney's fee and a fixed amount of alimony for a prescribed period of time. Plaintiff has appealed from that portion of the order relating to the division of property and the settlement of property rights.

The parties to this action were united in marriage in November, 1934, and lived together until February, 1944, at which time appellant, Dalia I. Spencer, was approximately thirty-four years of age, and respondent, Homer I. Spencer, was thirty-eight. They have no children. Since the matter of the divorce itself is not now contested by either party, we shall not further discuss that phase of the case, except to say that we are satisfied that the pleadings, evidence, and findings upon which the interlocutory order is based meet the requirements of Rem. Rev. Stat., §§ 982 and 996, and that the trial court correctly decided that particular issue. We shall therefore confine our attention to that part of the evidence which relates more nearly to the property rights and the circumstances to be considered in reference thereto.

Appellant has no special education and is not fitted for any special work. She has a curvature of the spine, resulting from falls sustained in early life. Although this physical defect is not ordinarily noticeable in her appearance, it gives her considerable pain at intervals and prevents her from being on her feet for more than two hours at a time without rest. Relief from her ailment might be obtained if medical or other professional attention were given her over a period of a year or more.

Respondent is an able-bodied man and, prior to 1940, was employed as a tinsmith and construction worker. In that year he entered upon the business of manufacturing and

distributing cheese, and has been engaged in that vocation ever since.

It appears that in, and for many years prior to, 1935, Mr. Wade H. Dean and Effie M. Dean, husband and wife, parents of the appellant, were the owners of a tract of land in Klickitat county containing about twenty-five acres, upon which was a large cave used for storing potatoes and, to some extent, for sight-seeing excursions. Mr. Dean and the respondent at that time entertained the view that the cave was particularly adapted for use in aging and curing cheese of the Roquefort type.

After making some research and study of the matter, they entered into an agreement whereby the Deans leased the premises to the respondent for a period of thirty years, beginning July 1, 1936, with the option on the part of the respondent to renew the lease for an additional period of thirty years, provided he in the meantime performed all the terms and conditions contained in the written instrument.

The lease carried a provision permitting respondent to sublet the premises or assign the lease to a corporation to be formed by him for manufacturing and storing cheese on the property, on condition, however, that such assignment would be valid and binding only so long as respondent owned and controlled a majority of the voting stock of such corporation, and only so long as the cave was used for the purposes above stated. As consideration for the lease, the lessors were to receive quarterly an amount equal to one and one-half cents a pound for all cheese manufactured and sold by respondent.

Although respondent was named as the sole lessee, it is conceded that the lease became the community property of the respondent and his wife, the appellant herein. The evidence indicates that the terms of the lease were tempered, somewhat because it was contemplated that the enterprise was, and would continue to be, a sort of family affair. Mr. Dean testified that his motive in entering into the lease was "to establish my children [meaning appellant and respondent] in a business."

Further investigation, research, experimentation, and correspondence fully established the fact that the cave is unique

in its adaptability for the aging and curing of cheese of the Roquefort type; indeed, it appears from the evidence that representatives of the United States department of agriculture, who had officially visited and examined the cave, declared that the department had been searching since 1925 for a locale having attributes of the caves in Roquefort, France, and that this cave was the first one of the desired kind that they had been able to find, and that this one, and no others in the United States, met the required qualifications. An interesting two-page article, with photographs, descriptive of the cave and the enterprise presently conducted in connection therewith, was presented in the Seattle Times under date of September 24, 1944, and appears as an exhibit in the case.

Pursuant to the lease and the extensive preparations made in connection therewith, respondent installed the necessary equipment and has ever since conducted on the premises the business of manufacturing a Roquefort type of cheese, under the trade name of "Guler Cheese." The lease and the business conducted thereunder constitute the principal items of community property herein and will be referred to in more detail a little later.

The only property involved in this action stamped with any separate interest of the one party or the other consists of a twenty-five hundred dollar "paid-up life" insurance policy which respondent took out eight years prior to his marriage, and a diamond ring valued at one thousand dollars which formerly belonged to respondent's grandmother and which, with her consent, he had given to appellant at the time of their marriage. The insurance policy was hypothecated to secure an outstanding bank loan of nine hundred ninety dollars, and its present surrender value is slightly in excess of that amount, although, according to the evidence, its full face value will be realized in a few years. This policy was awarded to the respondent, and he was charged with the obligation of the indebtedness to the bank. The diamond ring was awarded to the appellant.

The community property consists of three life insurance policies, household furniture and furnishings, a house and

lot in the town of Trout Lake, Washington, the lease on the cave property above mentioned, and the cheese business conducted thereon. One of these policies is on the life of the appellant and has a surrender value of about fifty dollars; the other two policies are on the life of the respondent and have a combined surrender value of approximately the same amount.

The household furniture and furnishings were, for the most part, acquired by gift or loan from respondent's parents and grandmother at the time of respondent's marriage, and the remainder was acquired by purchase or gift from other persons after the marriage. Respondent testified that the value of the furniture acquired from his parents and grandmother was about four hundred dollars; appellant claims that it is worth two thousand dollars. The court made no finding as to its value. The remainder of the furniture and furnishings is apparently worth much less than that which formerly belonged to respondent's parents.

The house and lot of about a half-acre were purchased by the parties to this action in 1943, at a price of two thousand dollars. There is a mortgage against the premises in the approximate sum of nine hundred dollars. The property has a net value of about eleven hundred dollars. At no time since their acquisition of this particular parcel of real estate have the parties lived upon it.

The lease on the cave property is of undetermined value. Respondent gave it a valuation of only one dollar. Appellant contends that it is worth many thousands of dollars. The court was unable to determine from the evidence what value should be placed upon it. This much may confidently be stated, however: The value of the lease is inseparably connected with the value of the business conducted on the premises and with respondent's knowledge and skill in its operation. For, without the cave, the business could not be carried on successfully or at all, and, without a successful operation of the business, the lease would have no value whatever. The lease and the business must therefore be considered together.

The evidence concerning the present financial standing and worth of the business is conflicting and confusing, but, according to a report made by a firm of certified public accountants, as of April 30, 1944, and introduced into the record by the respondent, the following facts and figures appear: Preliminary experimental and development costs of the venture amounted to $1,623.98; organization expense amounted to $1,000; and the value of the good will was estimated at $2,892.41. These three amounts, totaling $5,516.39, were written off by the accountants in their report.

Current assets, consisting of cash, accounts receivable, and inventories, totaled $6,256.09; fixed assets, consisting of plant equipment and a pick-up truck, were valued at $1,523.82. Leasehold rights, valued at one dollar, and leasehold improvements were listed at $29.76. The total assets, as thus computed, amounted to $7,809.67. As against this, the current liabilities, consisting of accounts payable, a note payable, accrued wages, interest, and taxes amounted to $4,265.55; and fixed liabilities, consisting of a note payable, were entered at $1,953. These two latter amounts totaled $6,218.55. The excess of assets over liabilities as thus reported was $1,591.12, of which $1,318.90 was posted as profit for the first four months of 1944. It may be stated here that the balance sheet and statement of profit and loss were taken from respondent's books, but these were not audited or certified by the accountants. The trial court made a finding to the effect that the business property and assets, exclusive of the lease, did not exceed in value the sum of eighteen hundred dollars.

The item of "inventories" mentioned in the report shows 2,358 wheels, or 11,275 pounds, of cheese on hand, of the value of $5,423.93, figured on the basis of approximately $2.31 a wheel, or approximately forty-eight cents a pound. These figures, however, are based entirely on the estimated cost of production of the cheese, rather than upon its sale value, which, according to one portion of respondent's evidence ranged from sixty-six to eighty cents a pound, and, according to appellant's contention, based on other evidence of the respondent, approximated $1.20 a pound. Upon these

figures, the value of the cheese on hand would be somewhere between $7,741.50 and $13,530, which would make the value of the inventories, and hence the business, considerably greater than that shown by the accountants' report. Between the date of commencement of the action, April 28, 1944, and the time of trial, respondent manufactured 2,553 additional pounds, which, of course, are not included in the original report of the accountants.

In making a division of the community property, the trial court awarded to the appellant the insurance policy on her life, the household furniture and furnishings other than those which had been given or loaned to the couple by respondent's parents and grandmother, and the diamond ring, and further awarded to her alimony in the sum of three thousand dollars payable at the rate of eighty dollars a month with interest at five per cent per annum on deferred balances, together with an attorney's fee of three hundred dollars. The court at the same time awarded to the respondent the two insurance policies on his life, the bulk of the household furniture and furnishings, the house and lot in Trout Lake, the leasehold interest in the cave property, and the cheese business and equipment, subject to all the indebtedness thereon.

Upon this disposition of the community property, particularly the leasehold interest and the cheese business, the present appeal is based.

The main question presented to us is whether the trial court made an equitable division of the property, as required by Rem. Rev. Stat., § 989 [P.P.C. § 23-23], which provides:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired. . . ."

Upon the basis of the physical and financial conditions hereinbefore described, and having due regard to the respective matters which the statute requires to be con-

sidered in such cases, we have become convinced that the division and disposition of property as made by the trial court are not entirely just or equitable. After a careful consideration of the record involving all the issues, we are of the opinion that in addition to what was awarded to the appellant by the interlocutory order, she should be given a one-half interest in the leasehold and business, respondent, however, to have full and exclusive management and control thereof so long as the business is conducted in accordance with the terms of the lease.

Since respondent must necessarily give his full time and services to the operation of the business, he should be compensated therefor, and we fix that compensation at one third of the net earnings, to be withdrawn by him monthly, on the basis of a fair estimate of what the annual net earnings will be. The remaining two thirds of the net earnings shall be divided equally between the respondent and the appellant, and distributed to them semiannually on July 1st and January 1st following the date of publication of this opinion. In the very nature of things, we cannot be more specific with reference to the manner in which the net earnings shall be determined or with reference to the payment of the outstanding indebtedness of the business. However, since both parties are vitally concerned in the success of the operation, it is assumed, or at least hoped, that each will refrain from doing anything that may jeopardize their mutual interests.

█ Appellant makes one assignment of error which requires a specific ruling. That assignment is directed to an order retaxing costs entered subsequent to the entry of the interlocutory order. The action was tried and the interlocutory order was entered in Klickitat county, wherein both parties resided and where the cause was pending. The order retaxing costs was signed by the trial judge in Cowlitz county, without a hearing and without the consent of the appellant that a ruling on the motion to retax could be made outside Klickitat county. Rem. Rev. Stat., § 41 [P.P.C. § 109-43], forbids a trial judge "to hear any matter outside of the county wherein the cause or proceeding is

pending, except by consent of the parties." The order re-taxing costs was undoubtedly irregular. *Driscoll v. Dufur,* 45 Wash. 494, 88 Pac. 929; *Shaw v. Spencer,* 57 Wash. 587, 107 Pac. 383.

■ However, in our opinion the error was without prejudice. The cause being triable here *de novo,* we have examined the cost bill and find that the items of costs here in question are of the kind which the trial court, in its discretion, may allow or disallow. Rem. Rev. Stat., § 493; *Croup v. DeMoss,* 78 Wash. 128, 138 Pac. 671; *Herriford v. Herriford,* 78 Wash. 429, 139 Pac. 212; *Brown v. Anacortes,* 79 Wash. 33, 139 Pac. 652; *Pressey v. Pressey,* 184 Wash. 191, 50 P. (2d) 891. We find no ground for holding that the court abused its discretion in refusing to allow those par-ticular items.

The interlocutory order will be modified, as hereinabove indicated, with respect to the leasehold and business; in all other respects both orders will be affirmed.

DRIVER, C. J., BEALS, SIMPSON, BLAKE, ROBINSON, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—The majority opinion recites that the value of the lease, which expires in 1966 with an option of renewal for an additional period of thirty years, "is inseparably connected with the value of the business conducted on the premises and with respondent's knowl-edge and skill in its operation."

If the business is not successfully operated, the lease will have no value. The leased site is valuable if the business of manufacturing cheese is conducted on the premises by respondent, whose knowledge and skill in the operation of the business makes the site valuable; therefore, for the next thirty to sixty years, respondent is to be shackled, unless he can find another site as well adapted for use in aging and curing cheese of the Roquefort type as the leased site. The greater his investment of time and energy in operation of the business, the greater is to be the return of a divorced wife who has not contributed in the past, nor is she required to contribute in the future, anything to make the lease of

value other than that she is the natural daughter of the lessor, which "has nothing to do with the case."

Respondent, under the terms of the lease, may sublet the premises or assign the lease to a corporation to be formed by him for manufacturing and storing cheese on the property, on condition that respondent own and control a majority of the voting stock of such corporation. How he may do this in the face of the opinion of this court, I am unable to determine. He is compelled, by our decision, to operate the business and to give to the divorced wife one third of the net returns. The ceiling of his compensation, as operator and owner of the business, is one third of the profits. He is condemned by this court to refrain from operating a business at the site in question and deriving any profit therefrom, unless he gives one third of the net returns to his divorced wife who has never been required, and is not now required, to make any contribution of time or energy to the success of the business. His only alternative is to find another site and operate the business at the present site in a half-hearted and unprofitable manner. If he discovers another cave, he may build a successful business in the new location, in the profits of which the divorced wife may not participate, and the old site may be held by him until 1966 and thirty years thereafter, making the present site of little or no value if he so desires.

The decree should be affirmed in its entirety

MALLERY, J., concurs with MILLARD, J.