[No. 31337. Department Two. November 22, 1950.]

THOMAS P. POWER et al., *Appellants*, v. W. W. ESAREY et al., *Respondents*.[1]

*William N. Goodwin* and *Bannon, Soule & Krilich,* for appellants.

*Louis J. Muscek* and *Marshall D. Adams,* for respondents.

ROBINSON, J.—Plaintiffs sought, in this action, to rescind a contract to purchase from the defendants a small tract of land upon which a grocery store and meat market was operated by defendant's (W. W. Esarey) brother, Howard Esarey, who had an equity in the land and store, the exact character and extent of which is not made apparent in the record, nor is it material in considering the questions raised in this appeal.

On January 28, 1947, the plaintiffs contracted with the defendants to purchase both the land and the store. Two contracts were executed on the same date, the subject matter of one being the land, and the other, the equipment and stock of the store and meat market, although the contract

[1] Reported in 224 P. (2d) 323.

for the sale of the store and its equipment and stock was merged into the land contract by the following paragraph therein:

"The amount of consideration herein acknowledged, represents a real estate trade in value, and also part of the consideration of this sale is personal property, known as Woody's Market, together with the fixtures and stock of merchandise, including the good will of said business; which is also covered by a conditional personal property contract, and any default shall likewise be effected in accordance to the real and personal property."

The controversy between the parties arose out of an error in the description in the land contract. The land therein was described as follows:

"That part of the North ten (10) acres of the Northeast quarter (NE¼) of the Southeast quarter (SE ¼) of section ten (10), Township Eighteen (18) North, Range Three (3) East of Willamette Meridian, lying West of the Mountain Road Highway, having approximately five hundred (500) feet highway frontage."

The "Mountain Road Highway," referred to in the foregoing description, is the heavily traveled road between Tacoma and the Rainier National Park.

As a corollary to the prayer for rescission, plaintiffs further prayed for judgment in the amount they had paid on the contract.

The total price agreed upon in the land contract, which, as hereinbefore indicated, also included the purchase price of the store and its stock and equipment, was nineteen thousand four hundred dollars, of which nine thousand dollars was to be paid as a down payment, and the remaining ten thousand four hundred dollars was to be paid in installments of one hundred seventy-five dollars a month, with interest at six per cent until the principal should be reduced to six thousand five hundred dollars, whereupon the interest was to be reduced to five per cent on the payments remaining to be paid.

In their complaint, plaintiffs allege that the defendants represented that the land had approximately five hundred

feet of frontage on the Mountain Road. It will be noted that the contract description of the land, hereinbefore quoted in full, closed as follows:

". . . having approximately five hundred (500) feet highway frontage."

Plaintiffs further alleged that both defendant W. W. Esarey and his brother Howard, during the negotiations for the purchase of the property, pointed out certain markers and fences as indicating the boundaries of the land, which, if they were true corners, the property would have had a highway frontage of five hundred feet, but that the defendant and his brother misrepresented the location of the corners and, in truth and in fact, the property had only a frontage of two hundred eighty-five feet.

In their answer and cross-complaint, defendants categorically denied that they had misrepresented the corners and boundaries of the land, and, as to the words in the contract description, "having approximately five hundred (500) feet highway frontage," alleged that defendant W. W. Esarey had his attorney prepare the contract, and, for his attorneys' use in doing so, gave him a title report of the Commonwealth Title Insurance Company, made to him in 1945, in which the very land involved in this action was described as follows:

"That part of the north 10 acres of the northeast quarter of the southeast quarter of Section 10, Township 18 North, Range 3 East of Willamette Meridian, lying west of the Mountain Road Highway, having approximately 500 feet highway frontage."

That description was followed in the title report by the following statement:

"The record title to said premises is vested in W. W. Esarey and Margaret G. Esarey, husband and wife, . . ."

The defendants in this action plausibly contended at the trial, and contend in this court, that the five hundred foot highway frontage portion of the description in the land contract between the parties cannot justly be regarded as evidence of a fraudulent purpose on the part of the defendants,

but only as a merely natural mistake of the scrivener in relying upon the description of the Esarey land in the title report above mentioned, which title report was introduced as an exhibit during the trial and is so certified to us in the statement of facts.

By the way of cross-complaint, the defendants alleged that the plaintiffs had failed, refused, and neglected to pay a number of the monthly installments provided for in the land contract, four of which had been delinquent since the year 1947, and that there was still due and unpaid on the contracts, as of the date of February 5, 1949, the principal sum of $7,642.13, with interest thereon at the rate of six per cent; that, on April 14, 1949, defendants sent a notice to the Powers of intention to declare a forfeiture and cancel both the real and personal property contracts. Defendants further alleged that the plaintiffs had violated the provisions of the contract in not paying a considerable amount of delinquent taxes. Defendants further alleged that, as to the personal property contract, plaintiffs had promised and agreed in a separate instrument entitled "Guarantee of Performance of Contract," to keep the stock of merchandise at a value of four thousand dollars, and in no case to permit, during the life of that contract, the stock of merchandise to be less than three thousand dollars inventoried value. They further alleged that the plaintiffs were depleting the stock of merchandise and had allowed it to diminish in value to less than the sum of three thousand dollars. They further alleged that the plaintiffs were insolvent and that plaintiffs had refused either to make the payments provided for by the contract or to surrender possession of the property to the defendants. Defendants thereupon prayed for judgment that plaintiffs' complaint be dismissed and that defendants be granted a decree declaring the contracts cancelled and terminated, and that the property be restored to them.

In their reply to defendants' affirmative defenses and cross-complaint, the plaintiffs denied substantially all of the material allegations therein.

The cause came on for trial on September 27, 1949. At the close of the trial, the trial judge took the matter under advisement and, on the following October 10th, filed a five-page written decision, portions of which we will quote. The trial judge introduced the decision by stating:

"Plaintiffs' action is for rescission on the ground that defendants falsely represented that the frontage on the Mountain Highway was 'approximately five hundred feet,' whereas, in fact, the frontage is only 296 feet."

After relating some of the testimony in the case, he commented upon the principal legal questions involved as follows:

"The Court finds that both the Esareys pointed out the fence as the south line and that they honestly believed that was their line and had actually occupied up to the line under claim of ownership.

"The applicable law is stated in the late case of Darnell vs. Noel, in Washington Decisions, Vol. 134, No. 6, page 392, as follows:

" 'Whenever the owner of property undertakes to point out to a prospective purchaser the boundaries of the property he expects to sell, his representations are matters of fact, and not of opinion. In indicating the boundaries, he must do so accurately, and his failure so to do will amount to a false representation, even though he acted under an honest mistake, without intent to deceive.' Williston on Contracts, Vol. V, § 1500, pg. 4189.

"The evidence clearly establishes a misrepresentation by defendant as to the property frontage under an honest mistake of fact—namely, the Esareys believed they owned the land in question. The Court considers that W. W. Esarey was bound by Howard's representations as well as his own.

"As stated in the Darnell case: 'It is well settled that actions for rescission must be promptly commenced.' (Citing several cases) 'The application of this rule is governed by the facts present in each case.'

"The rule is well stated in 9 Amer. Jurisprudence, page 389, as follows:

" 'If a person claims that a contract or conveyance was procured by fraud, he must elect to rescind promptly or he will be barred relief upon the ground of having ratified the transaction. If he proceeds to execute the contract with knowledge that fraud has been perpetrated on him, or con-

tinues to receive benefits under the contract after he has become aware of the fraud, or if he otherwise conducts himself with respect to it as though it were a subsisting and binding engagement, he will be deemed to have affirmed and waived his right to rescind.'

"In this case the plaintiffs became convinced of a shortage in the frontage upon the survey by Tibbitts in the spring of 1947. They called it to the attention of both Esareys. They did nothing. Powers must have understood they did not intend to do anything within a very short time. Then the law required Powers to elect to rescind within a reasonable time. What would be such a reasonable time depends on all the circumstances. One circumstance would be that the contract involved a shifting stock of goods. The Court would say the election to rescind should have been at least within a year from the spring of 1947, whereas the action was not commenced until May 10, 1949, which is over two years from the date of the misrepresentation. In addition, the plaintiffs have made payments on the contract and have made numerous efforts to sell the property. This is a ratification of the contract. The Court concludes that plaintiffs have waived their right to rescind by laches. Central Life Assurance Society v. Elsie Impelmans, 13 Wn. (2d) 632.

"Defendant prays that the contract of purchase be forfeited for non-payment of installments and of taxes. The Court considers a forfeiture would be inequitable under all the circumstances of this case. As stated in the last cited case, 'Forfeitures are not favored in the law and will not be enforced when it clearly appears that it would be inequitable to do so.' . . .

"The Court will deny a forfeiture if plaintiffs pay all back taxes within sixty days from date of judgment herein, and pay regularly the installment due November 10, 1949, and following. All prior principal payments are deferred until the end of the payments provided in the contract and in monthly payments in the same amount as the monthly payments prescribed in the contract."

On October 14th, plaintiffs moved for a rescission of the contract, notwithstanding the decision of the court filed on October 10th, and, in the alternative, for a new trial. These alternative motions were denied by the court by an order entered on October 24th.

A week thereafter, the trial judge entered his formal findings of fact and conclusions of law. They were con-

sistent with the decision he had filed on October 10th. We will now quote, somewhat liberally, from the findings of fact:

"VII. Court further finds that plaintiffs' action is for rescission, on the grounds that defendants misrepresented the amount of front footage on the Mountain Highway, which was approximately five hundred feet, whereas in fact the front footage was only two hundred ninety-six feet. To view the property, Howard F. Esarey took Thomas P. Power et ux along the South of the Store. Mr. and Mrs. Power testified that Howard F. Esarey pointed fence and corner post as being the South boundary of the land, but Howard Esarey denies he indicated any fence or post as a boundary line, but met the parties walking up there. He stated the land had not been surveyed. He admits that they went to the post on the North line. Court regrets to find he does not believe Howard's denials, especially since it clearly appears from other evidence that both Esareys believed the fence was on the South line. Howard testified that they both thought the fence was on their land, and had in fact built a barn on it, and at one time had a garden on it. The Tibbets, owners of the land joining the triangle tract on the South had his land surveyed in the spring of 1947, and it now appears that the frontage of the triangle tract is 296 feet instead of 500 feet. In other words the South boundary as pointed out by Howard Esarey, was 204 feet South of the actual boundary of the tract.   .   .   .

"IX. Court further finds that both Esareys honestly believed that the fence was on the South line and pointed out the fence as the South line thereof.

"The evidence clearly establishes misrepresentation by the defendant as to the property frontage under owners' mistake of fact, in that the Esareys believed they owned the land in question.   .   .   .

"X. Court further finds in this case that the plaintiffs became convinced of a shortage in the frontage upon the survey by Tibbitts in the spring of 1947. They called it to the attention of both Esareys. They did nothing, and Powers must have understood that they did not intend to do anything. Then the law required Powers to elect to rescind within a reasonable time. What would be a reasonable time depends upon the circumstances. One circumstance would be that the contract involved a shifting stock of goods. The Court would say that the election to rescind should have been at least within a year from the spring of 1947, whereas

an action was not commenced until May 10, 1949, which is over two years from the date of misrepresentation. In addition, the plaintiffs have made payments on the contract, and have made numerous attempts to sell the property. This is a ratification of the contract. . . .

"XIII. That pursuant to the real and personal contracts as set out in the Cross-Complaint of the defendants, that the said plaintiffs have refused and neglected to pay the payments which fell due for the months of May 10; 1947; September 10, 1947; December 10, 1947; March 10, 1949; April 10, 1949 and May 10, 1949, and have not made any payments thereon since, as provided for in said contract, at the rate of $175.00 per month.

"XIV. That said plaintiffs have also failed, neglected and refused to pay the taxes for the year 1947 in the sum of $46.85 and interest: for the year of 1948 in the sum of $48.03 and interest, and for the year 1949 in the sum of $105.82 and interest, and that no part thereof has been paid.

"XV. Court further finds that both real and personal property contracts provide for payments in the sum of $175.00 or more including interest at the rate of 6% on the unpaid balance then due, and payable on the 10th day of each and every month, and a like sum or more including interest at 6% on the 10th of each month thereafter until such time as the principal shall be reduced to $6500.00, then the interest thereon shall be reduced to 5% until the balance of principal and interest are fully paid. . . .

"XVII. Court further finds that there is now due and unpaid on said contracts as of the date of February 5, 1949, principal in the sum of $7,642.13, with interest thereon at the rate of 6%.

"XVIII. Court further finds that on April 14, 1949, after action commenced by plaintiffs, the defendants sent notice of intention to declare forfeiture of and cancellation of both real and personal contracts, by sending same by registered mail to the plaintiffs address at Route 1, Spanaway, Washington, which service of all demands, notices and other papers may be made by registered mail to the address of the purchasers, as shown by Exhibit on file herein.

"XIX. Court further finds that the plaintiffs have failed, neglected and refused to make payments called for in said notice of intention to declare a forfeiture of contract, in the time required by said notices, and pursuant to said contracts and said notices, and that said defendants did elect to declare a forfeiture and cancellation of said real and personal contracts.

"XX. Court further finds that the real and personal property involved in said contracts is operated as a grocery and meat market and the plaintiffs guaranteed, promised and agreed to keep the bulk stock of merchandise inventoried at the value of $4000.00, and agreed to not permit during the lifetime of said conditional contract, the stock of merchandise to be reduced to less than $3000.00 inventoried value, as per written guarantee of performance dated January 28, 1947, and marked Exhibit in the record herein."

To his findings of fact, above quoted in part, the trial judge attached the following conclusions of law:

"FROM THE FOREGOING FINDINGS THE COURT CONCLUDES:

"I. That the plaintiffs have waived their right to rescind the contract made and entered into between the parties hereto, by virtue of laches.

"II. Court further concludes that the plaintiffs have fully ratified the contract by making payments thereon, and made numerous efforts to sell same. By virtue thereof, plaintiffs are not entitled to any recovery or any relief as set out in their complaint.

"III. Court further concludes that by virtue of the laches on the part of the plaintiffs herein, and because of their ratification of the contract, the defendants are only bound to convey just that property set forth in the description as lying West of the Primary State Highway No. 5 of the Mountain Road, as set forth in the contract dated January 28, 1947.

"IV. Court further concludes that the defendants herein are entitled to a forfeiture and cancellation of the contract as prayed for in their Cross-Complaint, unless the plaintiffs herein pay all taxes against the property under purchase within 60 days from date of the entry of the judgment herein, and also will pay the delinquent installments for October 1949, on or before the 10th day of November, 1949, and provided that in the event plaintiffs should fail to pay the sum of $175.00 by November 10th, 1949, into the office of the Clerk of this Court, the forfeiture and cancellation of the contract shall immediately take effect; and provided further, in the event plaintiffs fail to file with the Clerk of this Court the receipts showing that all taxes upon said property has been paid in full within the period of 60 days from date of filing of this judgment, the defendants' forfeiture of said conditional contract of sale shall be declared effective and the contract cancelled and become null, void and of no effect."

On the same day (October 31, 1949) the trial judge entered his findings of fact and conclusions of law, he entered the judgment from which this appeal is taken.

We think it unnecessary to further lengthen this opinion by quoting the judgment from which this appeal is taken. We have hereinbefore set out, at considerable length, the decision which the trial judge wrote and filed shortly after the conclusion of the trial, and have also made extensive quotations from the findings of fact and conclusions of law subsequently entered by the trial judge. We think it sufficient to say that the judgment filed on October 31, 1949, is wholly consistent with the decision and the findings of fact and conclusions of law previously entered, in that:

(1)   It dismissed the plaintiffs' complaint;

(2)   It quieted title to the real estate in the defendants; and

(3)   Granted the defendants a forfeiture and cancellation of the land contract, as was prayed for in their cross-complaint.

However, the judgment provided that the forfeiture should not become effective as of the date of the judgment and might be avoided by the plaintiffs by paying certain delinquent monthly installments into the registry of the court for the benefit of the defendants by November 10, 1949, and paying all delinquent taxes against the property within sixty days from the entry of the judgment; and closed with the following paragraph:

"Provided further however, in the event the plaintiffs should make the payment aforesaid, and then fail to file with the Clerk of this Court receipts from the Pierce County Treasurer showing all taxes upon the property under purchase as being paid in full within the 60 days from date of filing this judgment, then the defendants' forfeiture of said conditional contract of sale shall be declared effective, and the contract cancelled, and become null, void and of no effect, and all payments thereon shall be forfeited in accordance to the provisions of the contract."

It is contended by the appellants that the decision and judgment of the trial court were based upon the opinions

of this court in *Central Life Assurance Society v. Impelmans,* 13 Wn. (2d) 632, 126 P. (2d) 757, and *Darnell v. Noel,* 34 Wn. (2d) 428, 208 P. (2d) 1194; and it is insisted that those cases should not be considered because the facts therein are quite different from the facts in the instant case.

It is true that the facts in those cases were different from the facts in this case. However, a careful reading of the decision of the trial judge, entered on October 10, 1949, foreshadowing his findings of fact, conclusions of law, and judgment entered on the following October 31st, convinces us that, as to the legal rules to be applied, the trial judge principally relied upon the following language which he quoted from the article on "Cancellation of Instruments" in 9 Am. Jur. 389, § 46:

"If a person claims that a contract or conveyance was procured by fraud, he must elect to rescind promptly or he will be barred from relief upon the ground of having ratified the transaction. If he proceeds to execute the contract with knowledge that a fraud is being perpetrated on him, or continues to receive benefits under the contract after he has become aware of the fraud, or if he otherwise conducts himself with respect to it as though it were a subsisting and binding engagement, he will be deemed to have affirmed the contract and waived his right to rescind."

The trial judge might well have also quoted the following paragraph on the same page in § 45:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he remains silent, and continues to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred."

As to the *Impelmans* case, a reading of page 647, of 13 Wn. (2d) of our official reports, will satisfy anyone that the general rule of law therein stated is directly applicable to the facts found by the trial court in this case. Furthermore, an examination of paragraph [7], on page 431 of the opinion in the *Darnell* case, 34 Wn. (2d) 428, will at once show that

portions of that opinion support the trial court's ruling in this case in favor of the plaintiffs that the defendants' misrepresentation as to the boundaries of the land were actionable, although innocently made.

The judgment from which this appeal is taken will stand affirmed. It is so ordered.

SIMPSON, C. J., MALLERY, HILL, and HAMLEY, JJ., concur.