[No. 34869. Department Two. September 15, 1960.]

F. E. WILSON, *Appellant,* v. F. VERNON PEARCE *et al., Respondents.*[1]

[1]Reported in 355 P. (2d) 154.

*Little, LeSourd, Palmer, Scott & Slemmons, John T. Piper,* and *Max D. Crittenden,* for appellant.

*Kellogg, Reaugh, Hart & Allison, Dan Reaugh* and *Gayle Barry,* for respondents and cross-appellants.

FINLEY, J.— F. E. Wilson, president and principal shareholder of the Solotone Corporation, a California corpo-

ration, which manufactures and distributes coin-operated music machines ("juke boxes"), commenced this action to recover the balance allegedly due on a negotiable promissory note, and to foreclose a chattel mortgage given as security for the note. Three defendants were named: F. Vernon Pearce and his wife, Billy A. Pearce, who by their answer admitted that they executed the note and mortgage; and Bruce N. Smith, who admitted having control and possession of the goods which were subject to the mortgage.

After admitting that they executed the note and mortgage, the Pearces, by way of affirmative defense, alleged that they had been induced to execute the instruments by reason of certain fraudulent misrepresentations made by one William P. Ryan. Specifically, the Pearces alleged that the note in the amount of $20,000, together with $15,000 in cash, had been given to Mr. Ryan in exchange for a juke box route operated by William P. Ryan. The Pearces further alleged that, in order to induce the purchase, Ryan had fraudulently misrepresented the past and the future potential gross and net earnings of the route. Finally, the Pearces alleged that, as a direct and proximate result of Ryan's fraud, they had been damaged in an amount in excess of $15,750. The Pearces' answer then concluded with the following prayer for relief:

"WHEREFORE, defendants pray that the chattel mortgage herein be declared null and void and plaintiff's action to foreclose said mortgage be dismissed with prejudice; that the total amount of defendants damages be adjudged to be not less than Fifteen Thousand Seven Hundred Fifty Dollars ($15,750.00), the amount suffered by the defendants as the result of the fraudulent misrepresentations of William P. Ryan; and that said sum be set-off against the amount claimed by the plaintiff and that the promissory note herein be held to be discharged and of no further force and effect.

"If the Court should find that the said chattel mortgage is valid, then defendants pray that the amount of said mortgage be also reduced by the amount of defendants damages in a total sum of not less than Fifteen Thousand Seven Hundred Fifty Dollars ($15,750.00) and said mort-

gage also be held to be discharged and of no further force and effect.

"That the defendants be awarded costs herein and such other and further relief as to the court seems just and proper."

Defendant Bruce N. Smith, by his answer, admitted that he was in possession of the chattels; *i.e.*, the music equipment which had been purchased by the Pearces from Ryan pursuant to the note and mortgage. Smith alleged that such possession resulted from a lease agreement with the Pearces. He therefore asked that any judgment holding the Pearces' rights in the equipment to be superior to Wilson's right should run also to the benefit of himself.

Wilson replied to the respective answers of defendants Pearce and defendant Smith, denying the affirmative allegations contained therein. On this state of the pleadings, trial on the merits was had before a judge of the King county superior court. The trial judge made findings of fact and conclusions of law, and entered judgment (1) dismissing Wilson's suit on the note and mortgage; (2) awarding the Pearces a monetary recovery against Wilson in the amount of $10,280.44; (3) ostensibly granting the Solotone Corporation leave to appear voluntarily within thirty days to show cause why the Pearces should not be awarded a judgment for $8,781.56 against it; and (4) providing that, if Solotone failed to appear within the aforesaid thirty days, the Pearces might have an additional sixty days in which to serve the Solotone Corporation with original process; and, finally, (5) granting the Pearces a lien against the music equipment held by Smith, the lien to be discharged only upon payment of the aforesaid amounts by Wilson and by Solotone.

Thereafter, Solotone having failed to appear voluntarily, the trial court issued a show cause order, which the Pearces attempted to serve upon Solotone by (1) serving a copy upon one Clifford Hoof, a Seattle attorney, who had represented Wilson at the trial; (2) serving a copy upon Wilson, by personal service in Los Angeles, California; and (3) serving a copy upon the Secretary of State of the

State of Washington at Olympia. Thereupon, Solotone made a special appearance before the King county superior court, and moved that this attempted service be quashed. The trial court granted the motion.

Wilson has appealed from the judgment, detailed above, entered against him; and the Pearces have appealed from the order quashing their attempted service upon Solotone. The two appeals have been consolidated for disposition by this court. For the sake of clarity, we will continue to refer to the parties by their surnames.

We shall consider first the issues raised by Wilson's appeal. Before enumerating Wilson's contentions, a short summary of certain pertinent facts, as found by the trial court, would appear to be in order. According to the findings of the trial court, for more than a year prior to October 14, 1952, Ryan had operated on a percentage basis two juke box routes in the Seattle area—one for Solotone and the other for the Carson Jewelry Company, of which Wilson was also a principal shareholder. On October 14, 1952, Solotone granted Ryan an agency franchise, or distributorship, for all of King county, by a written agreement. Thereafter, Ryan continued to operate the two routes, making weekly remittances to Solotone and to the Carson Company of 54% of the intake of their respective routes, and retaining the remaining 46% for himself. Each remittance was accompanied by a report showing the amounts collected from each location on the two routes. These weekly reports were reviewed personally by Wilson.

The trial court further found that in late June 1953 Ryan listed the routes for sale with the MacPherson Realty Company of Seattle for a price of $35,000. This realtor placed an advertisement in a Seattle newspaper, and thereby aroused the interest of the Pearces. A meeting was arranged between Ryan and the Pearces. At this meeting Ryan made false representations respecting his past profits from the routes and, also, respecting the cost or overhead involved in operating the routes. Induced by these representations, the Pearces, as stated above, purchased the routes; paying $15,000 in cash, and delivering to Ryan their

note for $20,000, payable in monthly installments of $250 each, and secured by a mortgage on the music equipment. Certain entries were made by Solotone on its accounting records, purporting to represent, first, a purchase by Solotone of the Carson Jewelry Company route, and second, a sale by Solotone to Ryan of both the Solotone and Carson routes for $23,000.

Furthermore, the trial court found that, shortly after the date of Ryan's sale to the Pearces (July 13, 1953), Ryan transferred the note and mortgage to Solotone, inscribing on the back of the note the following recital:

"For value received, the undersigned hereby assigns, sells and tranfers to SOLOTONE CORPORATION, their heirs and assigns forever, all his right, title and interest, in, to, and under the within instrument.

"Dated this 24th day of July, 1953.

"/s/ WILLIAM P. RYAN"

Ryan also delivered to Solotone $10,780.44 in cash. These funds were derived from the $15,000 cash payment (after payment of closing costs) which the Pearces had made to Ryan. Solotone retained the note and mortgage, plus the sum of $3,000, as payment for Ryan's purported purchase (for $23,000) of the Solotone and Carson routes. The remaining $7,780.44 was credited to an account, entitled "Loans payable to Wilson."

Continuing with our summary of the pertinent facts, as found by the trial court, the Pearces made six monthly payments to Solotone (totaling $1,500) through January 1954. Then, on February 4, 1954, Solotone transferred the note and mortgage to Wilson by inscribing on the back of the note a recital containing language similar to that used by Ryan when he transferred the instruments to Solotone. Thereafter, the Pearces made eleven payments of $250 each to Wilson (totaling $2,750) through December 1954; after this date, all payments by the Pearces ceased. The trial court summarized its findings respecting the benefits received by Solotone and by Wilson as follows:

"From the foregoing, the Court finds that the plaintiff, Wilson, received the following amounts:

| | |
|---|---:|
| "Amount from $10,780.44 Ryan check Solotone credited to plaintiff's account | $ 7,780.44 |
| "Eleven monthly payments from February through December, 1954, of $250.00 each | 2,750.00 |
| "Total received by plaintiff, Wilson | $10,530.44" |

"From the foregoing the Court finds that Solotone received the benefit of the following payments made by the defendants Pearce:

| | |
|---|---:|
| "Earnest money | $ 3,500.00 |
| "Balance of $11,500 down payment less $7,780.44 credited to plaintiff's account | 3,719.56 |
| "Miscellaneous escrow fees | 62.00 |
| "Six monthly payments from August, 1953, through January, 1954, of $250.00 each | 1,500.00 |
| "Total received by Solotone | $ 8,781.56" |

Finally, the trial court made findings to the effect that in August 1953, shortly after taking possession of the route purchased from Ryan, the Pearces discovered the falsity of Ryan's representations. They thereupon arranged a meeting with Ryan, through their attorney Philip L. Burton, for August 19, 1953. Ryan admitted the falsity of his representations, and orally promised to guarantee the Pearces a net income of $7,000 per year in the future. Ryan then apparently departed from the state, thereby frustrating several efforts made by the Pearces to serve him with legal process. As above related, in addition to making monthly payments on the note to Solotone, and later to Wilson, through December 1954, the Pearces for a time attempted to operate the route. In March 1954, the Pearces leased the route to defendant Smith. In November 1955, Smith became the equitable owner of the route. However, the trial court found that Smith would be willing to relinquish the route and return the equipment, upon rescission of the Ryan-Pearce sale.

To fully understand the basis of the trial court's decision, in addition to the above summary of its findings of fact, we list findings of fact Nos. 23 and 24 verbatim:

No. 23: "Plaintiff is a man with extensive experience in the ownership and operation of the music coin machine business. Prior to and at the time of the sale of the routes to the defendants Pearce, Solotone Corporation and Carson Jewelry Company owned the equipment, and plaintiff had full knowledge of the locations and revenue derived from each. With such information, he and Solotone are charged with knowledge that the reasonable value of the route was not in excess of $10,000.00. Because of the outrageous purchase price of which plaintiff had notice, plaintiff is found to have had actual knowledge of the existence of the fraudulent misrepresentations Ryan made to the defendants Pearce to induce the sale. By accepting the benefits of the fraudulently induced sale with full knowledge of the existence of the fraud, plaintiff and the corporation, Solotone, are deemed to have adopted Ryan's fraud."

No. 24: "In addition to the foregoing finding that Solotone had adopted Ryan's fraud by knowingly accepting the benefits of Ryan's fraudulent misrepresentations, there is ample evidence in the record from which to find that Ryan was acting as Solotone's agent in making the sale to the defendants Pearce. Such evidence provides an additional ground on which to charge Solotone with Ryan's fraud. Significant evidence in this connection is the fact that the plaintiff was not entirely frank as a witness, was evasive, and, in addition, did not make a full disclosure of the facts in his answers to defendants' written interrogatories."

On the basis of the findings, above summarized (with particular emphasis upon findings Nos. 23 and 24), the trial court entered its conclusions of law, upon which it based the judgment from which Wilson has appealed. In essence, the trial court concluded, first, that Wilson was not entitled to enforce the note and mortgage, because of his and Solotone's knowledge of Ryan's fraud. Secondly, the trial court concluded that, because Wilson and Solotone had received the benefits of the transaction, with knowledge of the fraud; and/or because Ryan had acted as agent for Solotone in negotiating the sale to the Pearces, the Pearces were entitled to rescission of the sale and to recover the benefits received by Wilson and by Solotone. Apparently, realizing that the Pearces' prayer for relief did not specifically ask for rescission, the trial judge entered among the items denominated "conclusions of law" the following:

"Defendant Pearces' pleadings are deemed amended to conform to the proof and the prayer of defendants' answer is deemed amended to request a rescission against both the plaintiff and Solotone Corporation . . ."

Apparently, the trial judge was of the opinion that, unlike Wilson, the Solotone Corporation was not personally before the court; he made provisions in the judgment relating to a voluntary appearance by Solotone, and/or an attempt by the Pearces to serve Solotone with original process.

Appellant Wilson has assigned error to numerous of the trial court's findings of fact and conclusions of law. However, in essence, he concedes the fact of Ryan's fraud, but objects to being charged with knowledge of the fraud to defeat his suit on the note and mortgage. As for the affirmative relief of rescission and restitution which the trial court granted to the Pearces, Wilson first asserts that the trial court erred, procedurally, in granting this relief, for the reason that it was not specifically requested by the Pearces' prayer for relief. Wilson next contends that, even as a matter of substance, the Pearces were not entitled to rescission as against Wilson and Solotone for two reasons: (1) because the bases for the trial court's decision in this respect —acceptance of benefits with knowledge of Ryan's fraud and/or agency on the part of Ryan—are not supported by the evidence; and (2) because, in any event, by their conduct subsequent to their discovery of Ryan's fraud, the Pearces affirmed the purchase contract, and thereby waived any right they might have had to rescission. This latter argument of affirmance and waiver is based upon the undisputed fact that, after learning of Ryan's fraud in August 1953, the Pearces (a) continued to make payments on the note through December 1954; and (b) continued to exercise dominion over the route by operating it themselves for a time, thereafter by leasing, and eventually selling the route to defendant Smith. In addition, Wilson contends that the Pearces affirmed the contract when, by their prayer for relief in the instant case, they asked for a setoff of damages rather than for rescission.

■ We are convinced of the merit of this general line of argument. In *Coovert v. Ingwersen* (1951), 37 Wn. (2d) 797, 226 P. (2d) 187, quoting from 9 Am. Jur. 389, § 45, we said:

" 'Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he remains silent, and continues to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred.' "

■ The Pearces claim that, after discovering Ryan's fraud, they intended at all times to rescind, if only they could have reached Ryan to effectuate a rescission. However, this overlooks the fact that they met with Ryan on August 19, 1953, *after* they had learned of the fraud. It would appear that they had ample opportunity at this meeting to announce their intent to disaffirm the contract and to demand restitution. They did not elect to take such a course. Instead, they obtained a promise from Ryan to guarantee them a net income of $7,000 per year in the future. Later, they exercised full dominion over the route, operating it as their own, finally selling it to defendant Smith. Thereby they affirmed the contract. *Coovert v. Ingwersen, supra.*

■ The significance of these acts of affirmance by the Pearces is twofold. In the first place, by affirming the contract after they had learned of the fraud, the Pearces lost any right they might have had to rescind and recover their payments. *Brown v. VanTuyl* (1952), 40 Wn. (2d) 364, 242 P. (2d) 1021; *Graff v. Geisel* (1951), 39 Wn. (2d) 131, 234 P. (2d) 884; *Power v. Esarey* (1950), 37 Wn. (2d) 407, 224 P. (2d) 323; *Coovert v. Ingwersen, supra; Beaulaurier v. Washington State Hop Producers* (1941), 8 Wn. (2d) 79, 111 P. (2d) 559, and cases cited therein. In addition, by affirming the contract after discovery of the fraud, the Pearces lost any right to avoid liability for nonpayment of the note because of fraud. *Weir v. School Dist. No. 201* (1939), 200 Wash. 172, 93 P. (2d) 308, 123 A. L. R. 1057.

Therefore, they are not entitled to raise the matter of Ryan's fraud, either (1) *affirmatively,* as a basis for obtaining rescission of the contract and restitution of the payments made thereunder, or (2) *defensively,* as a ground for avoidance of liability on the note now held by Wilson.

The first of these two conclusions renders it unnecessary for us to decide whether, either as a matter of substance or as a matter of procedure under their pleadings, the Pearces could have obtained rescission and restitution against Wilson and Solotone if they had not affirmed the contract. Because of the Pearces' acts of affirmance, it is immaterial, in relation to Wilson's ability to enforce the note and mortgage against the Pearces, whether Wilson occupies the status of a holder in due course with respect to those instruments.

A consideration of the correctness of the trial court's conclusion which denied Wilson the status of a holder in due course is essential to a full disposition of the instant case. As we have noted, the Pearces—by their original prayer for relief—asked for a setoff of damages resulting from Ryan's fraud as an alternative to dismissal of Wilson's suit on the note and mortgage. Pursuant to RCW 4.32.110, the defendant in a civil action upon a contract who was induced to enter into the contract by false and fraudulent misrepresentations has an immediate right of action, which may be set off in a suit by the assignee; *Nelson Co. v. Goodrich* (1930), 159 Wash. 189, 292 Pac. 406. However, such a setoff is not available against a *holder in due course* of a negotiable promissory note; *Bowen v. Rury* (1921), 117 Wash. 30, 200 Pac. 789.

The trial court's ruling, denying Wilson the status of a holder in due course of the note and mortgage, was based primarily upon the court's finding that both Wilson and Solotone had actual knowledge of Ryan's fraudulent misrepresentations at the time the note and mortgage were transferred by Ryan to them. On this appeal Wilson attacks the evidentiary basis for this finding and the trial court's additional finding that, in selling the juke box route to the Pearces, Ryan was acting as Solotone's agent. Our exam-

ination of the record leaves us in doubt as to the propriety of these findings. We are convinced that the trial court correctly denied Wilson the status of a holder in due course of the instruments in question. As we have previously noted, the trial court found (and this finding is supported by the record) that the note and mortgage were transferred by Ryan to Solotone, and by Solotone to Wilson—not by endorsement but by assignment. This court is committed to the position that a party deriving title to a negotiable instrument by assignment rather than by endorsement stands in the same position as was occupied by the assignor of the instrument. *Gross v. Bennington* (1909), 52 Wash. 417, 100 Pac. 846; *Huntington v. Lombard* (1900), 22 Wash. 202, 60 Pac. 414.

Therefore, under the authorities previously cited, the Pearces are entitled to set off such damages as they may have sustained as a result of Ryan's fraud against the amount for which they are liable to Wilson on the note.

In view of our disposition of the matters raised by Wilson's appeal, it is unnecessary for us to decide the single question raised by the Pearces' appeal from the trial court's order quashing their attempted service on the Solotone Corporation. By their acts of affirmance of the purchase contract, as previously considered, the Pearces lost any right which they might have had to obtain rescission and restitution against Solotone.

The judgment of the trial court dismissing Wilson's action on the note and mortgage and granting the Pearces rescission and restitution should be reversed. In addition, the cause should be remanded for the entry of judgment for Wilson on the note and mortgage, after allowing the Pearces a setoff of such damages as they are found to have sustained as a result of Ryan's fraud. It is so ordered.

WEAVER, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.