[No. 49899-1-I. Division One. March 1, 2004.]

SNOHOMISH COUNTY, *Plaintiff*, v. YASMIN HAWKINS, *Appellant*, WILLIAM HARNECKER, ET AL., *Respondents*.

[14] 61 Wn. App. 243, 809 P.2d 769 (1991).

*Richard L. Pope*, for appellant.

*Michael S. Dutton*, for respondent Katherine Harnecker.

*David A. Weibel* (of *Bishop White Miersma & Marshall, P.S.*), for respondent Bishop, Lynch & White, P.S.

AGID, J. — Yasmin Hawkins appeals a superior court judgment in favor of William Harnecker and Household Finance Corporation. She asserts the trial court erred when it ruled that Harnecker and Household Finance had valid encumbrances on her property. Because Yasmin validly quitclaimed all of her property rights and her signature was not required to encumber the property, we affirm.

## FACTS

In 1993, Rocky Hawkins (Rocky) purchased residential real property from William Harnecker by executing a deed of trust and promissory note in the amount of $98,470.80 (1993 Harnecker deed and note). The promissory note was due and payable in full in April 1998. Rocky purchased the home for himself and his wife, Yasmin Hawkins (Yasmin).

In August 1997, Yasmin signed a quitclaim deed to release her interest in the property. Yasmin's signature was acknowledged by a public notary, Rocky signed the deed as

the grantee, and the stated consideration was "release of beneficiary." The deed initially described the property only by the street address. But when the deed was recorded in April 1998, it contained an abbreviated legal description on the first page and a full legal description on an attached page. There was no reference on the first page of the deed to the attachment.

In April 1998, Rocky refinanced the 1993 Harnecker note with a loan from Fieldstone Mortgage (Fieldstone). On April 9, 1998, Rocky executed a note and deed of trust, securing a $124,950 obligation to Fieldstone (Fieldstone deed and note). Yasmin did not sign these documents. On April 20, 1998, Fieldstone assigned the deed to Household Finance Corporation (Household). Between April 1998 and June 2000, Yasmin made and delivered several payments to Household in accordance with the Fieldstone note.

Rocky used a portion of the Fieldstone loan to pay Harnecker, but he did not fully satisfy the 1993 Harnecker note. Therefore, on April 13, 1998, Rocky executed a second deed of trust and promissory note to Harnecker in the amount of $17,063.92 (1998 Harnecker deed and note). Yasmin did not sign these documents.

In late 1998, Yasmin filed for divorce. In November 1998, Yasmin filed a Notice of Lis Pendens and a Notice of Spouses Claim in Community Realty. During the dissolution proceedings, Yasmin argued for the first time that the recorded quitclaim deed was null and void. In 1999, Yasmin and Rocky divorced and the divorce decree awarded the property to Yasmin. Yasmin ceased making payments to Harnecker and Household in May and June 2000, respectively. In October 2000, Household gave notice that the Fieldstone note was in default. That same month, Yasmin executed a cancellation and rescission of the Fieldstone deed and note.

In November 2000, Snohomish County began an action to condemn Yasmin's property for public use, and in December 2000, Household sought to initiate a trustee sale. That same month, Harnecker sued for judicial foreclosure of the

1998 Harnecker deed and breach of contract on the 1998 Harnecker note. Yasmin counterclaimed to quiet title. In March 2001, Snohomish County agreed to pay $180,000 for the property and deposited that amount with the trial court. At the same time, Yasmin sued to restrain the foreclosure sale and to quiet title against the Fieldstone deed and note. Rocky failed to appear in any of these actions, and the court granted a default judgment against him.

The trial court stayed Household's trustee sale, consolidated the cases, and conducted a two day bench trial. Mary Anne Carlin, a paralegal who assisted in preparing the 1998 Harnecker deed and note, testified that in April 1998 Yasmin said that she was not Rocky's wife and that she had nothing to do with the property because she had quitclaimed it to Rocky. Carlin requested a copy of the quitclaim deed, and Rocky delivered it the next day. It did not have the complete legal description.

Yasmin testified at trial that she had never spoken to Carlin and had signed the quitclaim deed only because she was very ill and Rocky agreed to use it only if she died. Yasmin further testified that she was in very poor health in April 1998 when she was supposed to have talked with Carlin and was taking several pain medications. But, during trial, Household introduced a declaration signed by Yasmin in her divorce proceedings in July 1999, stating that she signed the quitclaim deed so that Rocky could refinance the 1993 Harnecker note.

The court ruled in favor of Household and Harnecker, finding that Yasmin's quitclaim deed, the 1998 Harnecker deed and note, and the Fieldstone deed and note were valid. The court, therefore, concluded that Household and Harnecker had bona fide encumbrances on the property. The court awarded judgment against Rocky and to Household for approximately $157,000 and to Harnecker for approximately $35,000. The judgments were to be paid in part from the condemnation proceeds.

## DISCUSSION

 Yasmin disputes portions of the trial court's findings of fact, conclusions of law, and judgment and order. On review, we must determine whether the trial court's findings of fact are supported by substantial evidence.[1] There is substantial evidence "if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise."[2] Where evidence conflicts, we need only decide whether the evidence most favorable to the respondent supports the findings.[3] Any unchallenged findings of fact are verities on appeal.[4] We must also determine whether the findings of fact support the conclusions of law and judgment, and we review conclusions of law de novo.[5]

### Valid Encumbrances

 Yasmin disputes the validity of the quitclaim deed, Fieldstone deed and note, and 1998 Harnecker deed and note. One who challenges a deed bears the burden of proving its invalidity.[6]

### A. Quitclaim Deed

 The trial court concluded that Yasmin ratified the recorded quitclaim deed and is estopped from claiming that Rocky lacked the authority to refinance the property. A

---

[1] *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986) (citing *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959)), *cert. dismissed*, 479 U.S. 1050, 107 S. Ct. 940, 93 L. Ed. 2d 990 (1987).

[2] *Id.* (citing *In re Welfare of Snyder*, 85 Wn.2d 182, 185-86, 532 P.2d 278 (1975)).

[3] *Miller v. Badgley*, 51 Wn. App. 285, 290, 753 P.2d 530 (citing *Thomas v. Ruddell Lease-Sales, Inc.*, 43 Wn. App. 208, 212, 716 P.2d 911 (1986)), *review denied*, 111 Wn.2d 1007 (1988).

[4] *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992) (citing *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 818, 792 P.2d 500 (1990)).

[5] *Miller*, 51 Wn. App. at 290 (citing *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978); *Bingham v. Lechner*, 111 Wn. App. 118, 127, 45 P.3d 562 (2002) (citing *City of Seattle v. Megrey*, 93 Wn. App. 391, 393, 968 P.2d 900 (1998)), *review denied*, 149 Wn.2d 1018, 72 P.3d 761 (2003).

[6] *Town of Twisp v. Methow Valley Irrigation Dist.*, 32 Wn. App. 132, 135, 646 P.2d 149 (1982) (citing *Truitt v. Truitt*, 100 Wash. 608, 612, 171 P. 532 (1918)).

party ratifies an otherwise voidable contract if, after discovering facts that warrant rescission, she remains silent or continues to accept the contract's benefits.[7] A ratifying party must have acted voluntarily and with full knowledge of the facts.[8]

Here, the trial court found that Yasmin intended to convey, release, and quitclaim all of her rights in the property, she executed the deed freely and voluntarily, she personally made and delivered several payments to Household without objection, and she told Carlin the property was not hers and she had quitclaimed it to Rocky. Yasmin did not assign error to these findings, and they are verities on appeal.[9] This is substantial evidence demonstrating that Yasmin knew the quitclaim deed would terminate her property interest and that Rocky had refinanced. The trial court did not err in finding that Yasmin ratified the deed, the quitclaim deed is valid, and Yasmin's claims are barred.[10]

B. Homestead Laws

■■ Yasmin argues that, even if the quitclaim deed is valid, the Fieldstone and 1998 Harnecker deeds are invalid because she did not sign them. Washington law requires both spouses' signatures on any instrument that conveys or encumbers the homestead.[11] A "homestead" consists of real or personal property used as a residence and may be both community and separate property.[12] Yasmin therefore argues that, even if the home was Rocky's separate property,

[7] *Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 433, 754 P.2d 120 (citing *Wilson v. Pearce*, 57 Wn.2d 44, 53, 355 P.2d 154 (1960); *Power v. Esarey*, 37 Wn.2d 407, 417, 224 P.2d 323 (1950); 17 Am. Jur. 2d *Contracts* § 489 (1964)), *review denied*, 111 Wn.2d 1019 (1988).

[8] *Id.* (citing 17 Am. Jur. 2d *Contracts* § 7 (1964); *Thiel v. Miller*, 122 Wash. 52, 58-59, 209 P. 1081 (1922)).

[9] *Cowiche Canyon Conservancy*, 118 Wn.2d at 808.

[10] *See Power*, 37 Wn.2d at 417 (a party who ratifies an otherwise voidable contract is barred from relief).

[11] RCW 6.13.060.

[12] RCW 6.13.010(1), .020.

it was still her "homestead" and her signature was required to encumber it. But in *Security Savings & Loan Ass'n v. Busch*,[13] the Washington Supreme Court held that a quitclaim deed extinguishes all of the grantor's legal and equitable rights in the property.[14] Yasmin's quitclaim deed therefore released *all* her property interests, including her homestead rights. Rocky was entitled to convey or encumber the property without Yasmin's signature.[15]

Yasmin argues that *Busch* does not apply because it involved a statute that has been repealed. But that statute governed only the creation of homestead rights; it said nothing about releasing these rights.[16] Yasmin also argues that *Busch* is inapplicable because it involved a deed that was signed by both spouses. But that is a factual distinction without a difference. Homestead laws are meant to protect one's home from creditors;[17] they do not protect a spouse who has conveyed her rights to another. Accordingly, the Fieldstone and 1998 Harnecker deeds are also valid. The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

Cox, A.C.J., and Grosse, J., concur.

Reconsideration denied April 26, 2004.
Review denied at 153 Wn.2d 1009 (2005).

---

[13] 84 Wn.2d 52, 523 P.2d 1188 (1974).

[14] *Id.* at 55-56 (citing RCW 64.04.050 (1973); *McCoy v. Lowrie*, 44 Wn.2d 483, 268 P.2d 1003 (1954)).

[15] RCW 26.16.010 (a husband's separate property may be conveyed or encumbered without his wife's consent).

[16] RCW 6.12.060 (1979) (filing a homestead declaration creates homestead rights). The law currently provides that homestead rights are created automatically. RCW 6.13.040.

[17] *Pinebrook Homeowners Ass'n v. Owen*, 48 Wn. App. 424, 427, 739 P.2d 110 (citing *City of Algona v. Sharp*, 30 Wn. App. 837, 841, 638 P.2d 627 (1982)), *review denied*, 109 Wn.2d 1009 (1987).