[No. 31437.   Department One.   April 19, 1951.]

FRANCES A. LYNCH, *Appellant,* v. EMMETT J. LYNCH, *Respondent and Cross-appellant.*[1]

[1]Reported in 229 P. (2d) 885.

438

*Rummens, Griffin & Short* and *Gose, Williams & Ennis,* for appellant.

*Minnick & Hahner,* for respondent and cross-appellant.

SCHWELLENBACH, C. J.—April 17, 1931, Frances Ankeny, age nineteen years, and Emmett J. Lynch, age twenty-two years, were married at Ellensburg. Frances was the daughter of Mr. and Mrs. John D. Ankeny, prominent and wealthy persons of Walla Walla. She had been brought up in an atmosphere of refinement and was not required or expected to perform the menial and arduous duties of life. Emmett had been born and raised on a farm. His family was of meager circumstances, and in school he had finished the eighth grade and what would be equivalent to one year in high school. At the time of the marriage, Emmett was farming a small place owned by his mother. He had no money but had accumulated a small farming outfit. The Ankenys gave the couple enough money to fix up the small dwelling house on the farm, and they lived happily there for a couple of years.

Two years later, in 1933, Mr. Ankeny gave Frances a three-hundred-twenty acre wheat ranch, known as the Cottonwood ranch, where they lived for four years. Emmett paid Francis a crop rental on the land, and the community lived off of the net proceeds of the operation of the ranch.

In 1937, Frances decided to move to town. They lived in a home that her father gave her. Later she acquired another home in Walla Walla, and, in 1948, she purchased a home at a cost of $35,200 cash. The testimony is in dispute

as to whether Emmett wanted to live in town. Frances testified that he was pleased with the arrangement because he was more centrally located.

In 1937, they purchased, by contract, a farm known as the Thiel farm, for $65,000, to be paid by crop payments. About the same time, Emmett entered into a partnership arrangement with his father-in-law for the operation of a cattle ranch. Mr. Ankeny furnished the money and Emmett furnished the time. After Mr. Ankeny's death, his heirs met and agreed that the community should receive $15,000 for its share of the venture.

Mr. Ankeny died in 1942, and Frances, taking into consideration what she inherited and what had been given to her prior to her father's death, now has a separate estate in the amount of approximately $750,000.

No payments were made on the Thiel contract by the community. Payments totaling $11,000 were made by Mr. Ankeny. After her father's death, Frances purchased, with her separate funds, the community interest in the Thiel farm for $50,000.

In 1943, the community commenced acquiring a ranch known as the Nine Mile ranch all on the credit of Frances. Emmett proceeded to develop this as a cattle ranch, building fences, corrals, and reclaiming some of the pasture lands by reseeding crested wheat grass by airplane. Additional lands were purchased in the mountainous region of Oregon, to be used as a summer range for cattle.

During the partnership arrangement with Mr. Ankeny, Emmett had an account with the Seattle First National Bank at Walla Walla, as well as a joint account with his father-in-law. Emmett was always a debtor of the bank and it was necessary for Mr. Ankeny to take care of the overdrafts.

Three children were born the issue of this marriage: Mary, May 4, 1934; Patrick, December 13, 1938; and Frances, July 18, 1944. A couple of years after Mary's birth, it was discovered, after she had been taken to many specialists, that she would not be a normal child, and she is now in the custodial school at Medical Lake. Although Frances fur-

nished the finances for the specialists, she apparently did not want to be bothered with Mary's care, and left her at the Cottonwood ranch with a nurse until she was sent to Medical Lake, while Frances lived in town.

The children Patrick and Frances were both born after Frances and Emmett moved to town. It was after they moved to Walla Walla that the parties commenced to drift apart. Frances spent more time with friends of her own social standing. Emmett became more interested in developing a cattle ranch. He also acquired a new lady friend with whom he associated around Walla Walla, and with whom he visited at Portland and in New Mexico. She helped him pick out a davenport and chair for the ranch house and also supplied the plans for the new house at the ranch. Frances seemed particularly irritated when she received a bill for a dozen roses which Emmett had ordered for this lady.

At the trial, the court granted a divorce to Frances because of cruel treatment and denied a divorce to Emmett. The decree provided that

". . . the plaintiff (Frances) be, and she hereby is granted the care, custody and control of the three minor children of the parties (naming them) with the right of visitation reserved in the defendant at all reasonable times and places; during the summer vacation months, or the months in which the children are not in school, the plaintiff will be required to permit Patrick Lynch and Frances Lynch to be in the actual physical custody and control of the defendant, with right of visitation reserved to the plaintiff during said period at all reasonable times and places."

The court found that the community owned real estate known as the Nine Mile ranch, of which approximately 12,-000 acres are located in Walla Walla county, and approximately 5,000 acres of mountain land which are located in Umatilla county, Oregon; and certain personal property consisting of cash, stock, and equipment; that the total value of the community assets is approximately $112,000, and that the community liabilities total $15,697.76, of which sum $13,000 is due the plaintiff for an unpaid loan and

$2,697.76 is due for Federal income taxes. The court found the value of the wife's separate property to be $750,000.

Attached to the decree was exhibit A, which listed the real property of the community; exhibit B, which listed the personal property of the community; and exhibit C, which listed the separate real and personal property of the plaintiff. The court awarded all of the real and personal property as shown in exhibits A and B to the defendant, excepting certain specific items of personal property which were awarded to the plaintiff; and all of the real and personal property listed in exhibit C to the plaintiff. Item 8 of exhibit A, mountain land which was the separate property of plaintiff, was awarded to defendant.

The court awarded the sum of $6,803.07 from the community cash on hand shown in exhibit B to plaintiff. It was ordered that the Federal income taxes, including interest, in the sum of $2,792.76, be paid by plaintiff.

Defendant was ordered to pay, during the months the children were with the plaintiff, $150 a month for the support of the children, until December 1, 1952, and thereafter $200 a month until Patrick reaches the age of majority, at which time the payment shall be reduced to $100 a month, until Frances reaches the age of majority. Both parties were required to pay equally for the care of Mary at the custodial school.

The plaintiff appeals from that portion of the decree awarding the custody of the children to the defendant during the summer months; awarding all of the community property and a portion of the wife's separate property to the husband; assessing the wife with the claimed value of improvements placed on her separate property; requiring her to pay additional income taxes; granting an attorney's fee to respondent and in denying one to appellant; in not requiring respondent to pay $2,250 support money admittedly due; and in failing to allow appellant $6,955.64 admittedly due to her for income taxes paid by her separate estate. Defendant cross-appealed from that portion of the decree denying him a divorce.

With regard to respondent's cross-appeal, we agree with the trial court that respondent's charges against appellant were groundless and based upon speculation.

██ We have not recited all of the evidence concerning respondent's misconduct and do not wish, for the sake of the children, to make it a public record. But we are convinced, from the record, that respondent is not a proper person, at this time, to have the custody of growing children. Furthermore, there is no showing that the ranch house, as presently operated by respondent, would be a proper place for them. It should also be noted from the record that respondent, although he asked for custody of the children in his cross-complaint, did not press the issue during the trial. Counsel for respondent orally stated: "We are not now asking for the custody of the children."

In view of the trial court's finding that both parties are fit and proper persons to have custody of the children, we hesitate to modify the decree in this respect; but in view of respondent's past conduct, and the absence of a showing that the ranch would be a suitable home for the children during the summer months, and the fact that respondent did not deem the matter of sufficient importance to press his claims during the trial, we feel that the decree should be modified to award the care, custody, and control of Patrick and Frances to appellant, with the right of visitation reserved in the respondent at all reasonable times and places within the corporate limits of the city of Walla Walla. Respondent, of course, would have the right to petition the court for a modification of the decree as to custody upon a proper showing on his part. Rem. Supp. 1949, § 997-11; *Wilcox v. Wilcox*, 32 Wn. (2d) 633, 203 P. (2d) 328.

We also feel, because of the disposition we are making of the property, that the decree with regard to payments for the support of the children should be modified to require respondent to pay $75 a month for their support until December 1, 1952, and thereafter $100 a month until Patrick reaches the age of majority, at which time the payment

shall be reduced to $50 a month until Frances reaches the age of majority.

Rem. Supp. 1949, § 997-11, provides for the disposition of property in divorce actions:

". . . and making such disposition of the property of the parties, either community or separate, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, . . ."

We feel that the trial court was influenced, in dividing the property, by the fact that it had awarded part-time custody of the children to respondent. The court stated: "The father should be given an opportunity to hold the respect and devotion of his children by having the means to contribute substantially to their support." We agree with that laudable purpose, but feel that the father should hold the respect and devotion of his children by his own efforts, and not by means of his wife's money. When interrogatories were taken prior to trial, respondent thought he was entitled to half of the community property, but at the trial he asked for all of it. A man, as well as a woman, has a right to change his mind, but it seems to us that respondent has the idea that he should continue to be maintained in the manner to which he has become accustomed.

Respondent brought nothing to this union but his ability to work. We do not discount his contribution to the community wealth. He did all of the work. But without the financial contributions of appellant and her father, there would not now be any community estate to divide. Much of the expense of maintaining appellant and the children has come from appellant's separate funds. We feel that a just and equitable division of the property would be to award all of her separate property to appellant, and to divide the community property equally between the parties, with the exception that the livestock located on Nine-Mile ranch should be awarded to respondent, and with the further exception that the award to appellant of the few

items of personal property (furniture, saddle horses, and keepsakes) should stand. We are aware that appellant is wealthy, and, if respondent were sick or in need, we would not hesitate to dip into appellant's personal funds to provide for his care. But respondent is young and virile. Judging by the manner in which he has lived and the trips which he has taken, he has led a full life since he married appellant, and is being left far from destitute.

However, we feel that he should be given possession of the cattle ranch, as shown in exhibit A, for a period of fifteen years. This includes the community real property and a portion of appellant's separate real property, as shown in item 8 of exhibit A. It was all acquired for the purpose of operating a cattle ranch at a time when the parties were living together. Respondent has had very little education. This is the only business that he knows and enjoys. We have searched the record and are unable to decide, from the evidence, the proper rental to be charged respondent. The case will therefore be remanded to the trial court with directions to make this determination. Respondent will also be given an option to purchase appellant's share of this property within the next ten years, at a price to be mutually agreed upon. If the parties cannot agree upon a price, that issue shall be submitted to the superior court.

We agree with the trial court in assessing the wife with the value of all improvements placed on her separate property. The improvements were made by respondent's efforts and appellant should pay for them.

We agree with the trial court in requiring appellant to pay additional income taxes. Joint returns were made. The wife, having the larger income, received the most benefit from the joint returns.

The court decreed that respondent be exonerated of and from the payment of attorney's fees or other costs on behalf of appellant. In view of the size of appellant's separate estate, we believe that this was fair and in accor-

dance with the spirit of the law regarding the allowance of such costs. Rem. Supp. 1949, § 997-9.

■ With regard to the claimed errors that the court did not require respondent to pay $2,250 due for support money, which he promised to and did not pay, and in failing to allow her the sum of $6,955.64 due to her for community income taxes paid by her separate estate, the court was winding up the affairs of this community. It had all of the property of the parties, community and separate, before it. It had a right to consider the situation in which the parties would be left. It was entirely fair and proper to exonerate respondent of these past obligations.

The decree is modified in the respects heretofore indicated, and affirmed in every other respect. The cause is remanded with directions to determine the amount of rental. Neither party will recover costs of this appeal.

GRADY, BEALS, HILL, and DONWORTH, JJ., concur.

July 23, 1951. Petition for rehearing denied.