MERVIN DeRUWE, *Respondent*, v. ELAINE DeRUWE,
*Appellant.**

*Murray E. Taggart,* for appellant.

*Vaughn Hubbard,* for respondent.

*Reported in 433 P.2d 209.

HALE, J.—The DeRuwe divorce gave the trial court several complicated problems in property division. In only two respects do we believe we have found a better solution.

Plaintiff Mervin DeRuwe and Elaine married in 1942. The husband, at the time, had property of between $29,000 and $36,000, consisting largely of interests in ranch and farm lands, livestock, and farming and ranch equipment. During their marriage, the husband inherited $13,000 which he commingled with their growing community property. Elaine brought little or no property to the marriage. Mervin DeRuwe started this divorce and Elaine cross-complained.

By the time of the decree, they had 5 children ranging in age from 7 to 22 years and a son of the husband by a previous marriage whom Elaine adopted. The adopted son was self-supporting. Of the six children, the court left the three youngest in the care, custody and control of their mother. Timmie, an older boy about 20 years old and in college, stayed on with his father where he could work with his two older brothers on the ranches and farms when not in school.

The husband, 50 years of age at the time of the decree, had completed only 8 years of schooling but had achieved success as a sheep rancher and cattleman. His operations, despite substantial losses incurred during 3 years of marriage, showed annual net incomes otherwise fluctuating irregularly from $2,000 in 1961, to a high of $41,000 in 1948. The total growth in gross value of the community properties, however, reflected the husband's success as a stockman and farmer, for during the marriage it had increased to more than a million dollars. This gross value included, of course, the amount of property brought into the marriage by the husband and the $13,000 inherited by him.

The learned trial judge, after comprehensive analysis of the various ranches, livestock, equipment and property, made a specific finding that "The net estate of the parties is approximately $865,000.00." Fortifying this finding of $865,000 net value was the fact that, shortly before the

commencement of the action, the Travelers Insurance Company had loaned the parties $375,000 on a mortgage of their various properties. Their properties carried an additional mortgage loan from the Production Credit Administration of about $121,000.[1]

During an earlier separation, the parties had entered into a property settlement agreement dated December 18, 1962, but modified this by a reconciliation agreement January 6, 1964, and the court took cognizance of these agreements in making a division of the community property in the instant case. After considering the husband's initial separate property of $29,000 to $36,000, plus his $13,000 inheritance, the court found:

> Both the husband and the wife throughout the marriage have worked hard and lived frugally; their community effort has contributed substantially to the increase in the amount and value of their holdings; there has been a substantial increase in the value of the properties owned by the husband at the time of marriage; although each has substantially contributed, it is impossible to determine with any degree of accuracy in what proportion the holdings of the husband prior to marriage and the efforts of the community since marriage contributed to the $865,000.00 present net worth of the parties.

Finding both parties at fault, the trial court granted each a divorce from the other. It placed the three youngest children in the wife's custody and ordered the plaintiff husband to pay $100 per month for the support of each child.

The decree awarded the wife $50,000 in cash and an

---

[1] ". . . At the time of his marriage to the defendant wife, the husband's net worth was between $29,000.00 and $36,000.00. The wife had no property at the time of her marriage. Since the marriage, the husband has inherited approximately $13,000.00. Since the marriage, the parties have added to the Washington State lands and have purchased additional lands in the State of Montana. The wife has entered into a contract for the purchase of a home in Lewiston, Idaho. As of August 25, 1965, the closing date of the ranch books, indebtedness against the property in Washington and Montana consists of a mortgage to the Travelers Insurance Company in the sum of $375,000.00 plus interest and to the Production Credit Administration of approximately $121,-000.00 plus interest. The net estate of the parties is approximately $865,000.00."

additional $15,000 payable in 3 years with interest at 6 per cent annually, and ordered the plaintiff to pay the defendant $5,000 per year alimony until the further order of the court, the alimony to be secured by a $225,000 lien upon the husband's property. In addition, the wife was to retain all of the parties' equity in a residence she was buying in Lewiston, Idaho. All of the other community property, farm land, ranch land, equipment, supplies and livestock, was awarded to the husband; the parties were to pay their respective attorney's fees and costs. Except for the unpaid purchase price in the defendant's Idaho residence, the plaintiff husband was ordered to assume all existing community debts.

Challenging the adequacy of the property award, the $5,000 annual alimony and the $100 support for each minor child, defendant wife brings this appeal. Two of these items may be quickly disposed of. In fixing the child support and alimony and dividing the property, the court gave great consideration to the fact that the older children would find employment in and participate in operating the plaintiff's farms and ranches. Understandably, the court was reluctant to break up these properties, for their successful operation appeared dependent on the plaintiff's continued management and ownership of them; the court sought to secure the wife in her alimony by a lien, leaving the husband in ownership and control of the farm-ranch operations.

Indeed, the court believed that the wife's financial security under the decree was so largely dependent on the plaintiff's skill and industry that it based its division of property on this idea. Accordingly, when we consider the annual income derived from plaintiff's ranching, farm and livestock activities, we think that the $100 per month child support and the $5,000 per year in alimony as fixed by the decree came well within the court's discretion and these provisions will not be disturbed. We thus affirm the decree as to child support and alimony. The division of property and attorneys' fees, however, should, in our view, be changed.

■ Property acquired during marriage is presumed to

be community property. *Stokes v. McDowell,* 70 Wn.2d 694, 424 P.2d 910 (1967). Of the $865,000 in property owned by the parties, less than $60,000 of it could possibly be regarded as the husband's separate property, which leaves more than $800,000 worth to be disposed of as community property.

■ Although the division of community property need not be exact, but just and equitable (*Robuck v. Robuck,* 62 Wn.2d 917, 385 P.2d 50 (1963)), with a wide latitude resting in the trial court's discretion to make the division (*Bodine v. Bodine,* 34 Wn.2d 33, 207 P.2d 1213 (1949)), more specific principles are available to aid the court in arriving at a just and equitable division in particular cases. First, the court must consider the necessities of the wife and the financial ability of the husband. *Hogberg v. Hogberg,* 64 Wn.2d 617, 393 P.2d 291 (1964). Then, it should take into consideration the age, health, education and employment history of the parties and their children, and the future earning prospects of all of them. The court should, likewise, give thought to the sources and dates of acquisition of all properties accumulated by the parties during marriage and what properties each brought into or contributed to the community property, along with the amounts and kinds of property left to be divided at the divorce. Even when regard is had for the fault of the parties and the wrong inflicted by the one upon the other, it is the economic condition in which the decree will leave the parties that engenders the paramount concern in providing for child support and alimony and in making a property division. *Stacy v. Stacy,* 68 Wn.2d 573, 414 P.2d 791 (1966).

■ Although this court will not substitute its judgment for that of the trial court in questions of child support, custody, alimony and division of property except where there has been a manifest abuse of discretion in one particular or another (*Root v. Root,* 64 Wn.2d 360, 391 P.2d 962 (1964)), we will, if shown some abuse of discretion, correct the decree to ameliorate or remove if possible the inequities fostered by it. *Hogberg v. Hogberg, supra; Dicki-*

*son v. Dickison,* 65 Wn.2d 585, 399 P.2d 5 (1965); *Stacy v. Stacy, supra.*

■ Applying then the foregoing rules in attempting to assess whether the property division was fair and equitable, we see that, in 22 years of marriage, the community property increased by at least $800,000; that the wife comes out of the marriage with less than $90,000 plus $5,-000 per year alimony, and the husband with more than $700,000 of the community property, plus a duty to pay the $5,000 annual alimony. Although the learned trial court assumed that it was better for the future economic welfare of both parties to leave all of the ranch and farm lands, livestock and equipment in the ownership and management of the husband, thereby assuring that his already demonstrated skill and industry in running the ranches and farms be perpetuated, this solution does not override nor should it foster so marked a disparity in the division of property as characterized the decree.

Considering the property accumulated during marriage, the age and future economic prospects of the parties, their responsibilities to their children and all of the other factors bearing upon the question, we think that the husband came out of the marriage with too great a share and the wife too little. And the same thoughts lead us to conclude that the husband should pay the attorneys' fees and costs of the litigation and this appeal.

We are of the opinion, therefore, that, in addition to everything granted her in the decree, the wife should be awarded $100,000 more from the community property, but that delivery thereof be made in futuro so that, while the wife may be secured in her right to the additional amount, the husband's management and control of the property be left intact. Thus, delivery of the added $100,000 in property division should, in our opinion, be deferred for 10 years, payable $10,000 annually thereafter, the wife to be fully secured in the meanwhile and with interest at 6 per cent per annum beginning at the 10th year and continuing until the $100,000 has been paid in full.

The cause is, therefore, remanded to the superior court

for modification of the decree of divorce by awarding to the defendant wife an additional $100,000 in money as her share of the community property, payable to her at the rate of $10,000 per year commencing the 10th year following the entry of the modified decree, with interest at 6 per cent annually commencing the 10th year, and all to be secured by a lien, encumbrance or mortgage junior only to existing encumbrances of record. The defendant wife shall also be awarded her attorneys' fees in the trial court and on appeal in the total sum of $15,000 and her costs on appeal.

FINLEY, C. J., HILL and ROSELLINI, JJ., concur