[No. 44308.   En Banc.   June 9, 1977.]

*In the Matter of the Marriage of* RICHARD H. HADLEY, *Respondent, and* CLAUDETTE M. HADLEY, *Appellant.*

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle,* by *Robert R. Beezer,* for appellant.

*Perkins, Coie, Stone, Olsen & Williams,* by *William A. Gould* and *M. Margaret McKeown,* for respondent.

DOLLIVER, J.—This is an appeal of the property division and maintenance award in a decree of dissolution. Appeal to this court was allowed pursuant to ROA I–14(e) (now RAP 4.2(a)(4)), due to "fundamental and urgent issues of broad public import requiring prompt and ultimate determination" presented by this case. Mr. Hadley, the respondent, has cross–appealed the award of attorney's fees to the wife.

Richard and Claudette Hadley were married in 1964. At that time, Claudette was 28 years old and owned no significant property. Richard was 42 years old and had assets of approximately $2.3 million as a developer and owner of commercial real property. Two children were born during the marriage. Custody of the children was awarded to Mr. Hadley and is not at issue in this proceeding.

About a year after the marriage, Mrs. Hadley was diagnosed as having multiple sclerosis. She has had a progressive deterioration of her physical condition and is now totally disabled, requiring full–time nursing care and other medical attention.

Due to the complexity of the issues before the trial court, a certified public accountant was appointed as a special

master to assist the court in matters of accounting and taxation. At the time of trial, which lasted 3 weeks, the Hadleys' net worth was approximately $9.4 million. Of this amount, Mrs. Hadley received approximately $545,000 in community property and $480,000 in maintenance, to be paid at $4,000 per month for 10 years. Mr. Hadley received all other property in the estate.

The appellant is alleging that the decree manifests an abuse of discretion and requires modification. After studying the transcript of the trial, the briefs of the parties, the trial court's oral and written findings and conclusions, we are of the opinion that the decree should be affirmed. In making the property division, the trial court was mindful of Mrs. Hadley's substantial need for income to pay her medical and living expenses and was also aware that the future security of Richard, Claudette and their children was dependent upon Richard's continuing financial success. At the time of the trial, the corporations upon which both parties were dependent for their financial security were at a critical juncture. In order for Mr. Hadley to borrow funds to pay for the present operations of the businesses, the trial court found that it was necessary that there be no substantial diversion of major assets. The corporations were interrelated and interdependent as a result of loans between them and as a result of some pledging of property to secure a debt of related corporations which was owed to third parties. Under these circumstances, the trial court had a difficult job dividing the property in such a way as to avoid impairing the productivity of the corporations. The court's division of the property provided for a substantial and steady income to Mrs. Hadley in the form of maintenance payments and capital assets which were income producing. The remaining Hadley properties were awarded to Mr. Hadley, thus allowing him to obtain the necessary loans to keep the businesses productive. Both parties will benefit from this arrangement. The trial court was conscientious and fair in its decree, considering all of the facts and circumstances. Under these conditions, we will not substitute

our judgment. *Baker v. Baker,* 80 Wn.2d 736, 746, 498 P.2d 315 (1972).

The initial question before this court is whether Mrs. Hadley has waived her right to appeal by her acceptance of the benefits of the dissolution decree. We have before us an uncontested affidavit stating that Mr. Hadley delivered certain properties and maintenance payments to Mrs. Hadley pursuant to the dissolution decree, that she accepted them and has exercised dominion and control over them.

Mr. Hadley does not contend that Mrs. Hadley is entitled to any less than she received; rather, he argues, the decree is just and equitable. A successful appeal by Mrs. Hadley could only increase her share of the property. Thus, Mr. Hadley has not been prejudiced by Mrs. Hadley's acceptance of what he must be deemed to admit as her fair share. He has not cross–appealed on any issue other than attorney's fees.

As a matter of community property law, Mrs. Hadley has a right to some portion of the Hadley assets. She has not accepted *his* property but rather has accepted her share of the community. As a totally disabled person, she is in need of constant services and has no means of support other than the maintenance payments. To require that she abstain from accepting the delivered property under these circumstances may effectively eliminate her opportunity to appeal. We find there is no inconsistency here in her accepting the award and filing an appeal. *Schreiber v. Schreiber,* 217 So. 2d 301 (Fla. 1968), *on remand,* 217 So. 2d 343 (Fla. Ct. App. 1969); *McIlroy v. McIlroy,* 191 Ark. 45, 83 S.W.2d 550 (1935); *Cohen v. Cohen,* 102 Cal. App. 2d 624, 228 P.2d 54 (1951); *Hancox v. Hancox,* 54 Ill. App. 2d 476, 203 N.E.2d 613 (1964); *Marshall v. Marshall,* 364 P.2d 891 (Okla. 1961); *Hofer v. Hofer,* 244 Ore. 88, 415 P.2d 753 (1966); *Frankel v. Frankel,* 41 Ariz. 396, 18 P.2d 911 (1933); *Hansen v. Hansen,* 233 Cal. App. 2d 575, 43 Cal. Rptr. 729 (1965); *Kassebaum v. Kassebaum,* 178 Neb. 812, 135 N.W.2d 704 (1965).

Respondent has urged that *Murray v. Murray,* 38 Wn.2d 269, 229 P.2d 309 (1951) and *Potter v. Potter,* 46 Wn.2d 526, 282 P.2d 1052 (1955), control the disposition of this issue. However, in neither of these cases was there a showing of either total disability or necessity which distinguishes this case.

The appellant assigns error to the acceptance by the trial court of a series of property status agreements as being a valid characterization of the property as community or separate. Both appellant and respondent urge that the validity of the property status agreements is determined by the standards set forth in *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972), and *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954). Although these cases involved prenuptial agreements and the trial court characterized the agreement here as neither prenuptial, nor postnuptial, nor made in contemplation of dissolution but rather "analogous to a community property agreement," we believe the principles set forth in *Friedlander* and *Hamlin* are applicable here. The tests are: (1) whether full disclosure has been made by respondent of the amount, character and value of the property involved, and (2) whether the agreement was entered into fully and voluntarily on independent advice and with full knowledge by the spouse of her rights. Both of these tests have been met.

During the Hadley marriage, three property status agreements motivated by Mrs. Hadley's illness were executed by the parties. Their undisputed purpose was to minimize her death and estate taxes. The trial court made a finding of fact that the agreements were based on a study conducted by a certified public accountant and an attorney who traced the assets to their respective sources and characterized the assets accordingly. During the marriage, the parties relied on these agreements in financing subsequent ventures, preparing income tax returns, opening and maintaining bank accounts, and in making various expenditures. The trial court also made a finding, supported by substantial evidence, that the agreements were voluntarily and knowingly

signed. Mrs. Hadley testified she was not forced to sign the agreements and did not feel her relationship with her husband would change had she declined to sign. Prior to signing, she traveled to each of the major businesses and was kept informed of developments by her husband. There was a complete disclosure to her of the Hadley assets. There is no evidence of fraud or overreaching in connection with the signing of any of the agreements.

The property status agreements were drafted by counsel who represented the Hadleys in both their business and personal affairs. Mrs. Hadley had spoken highly of this lawyer and he was available to her for independent consultation. At one time, Mrs. Hadley had engaged another lawyer to examine the agreements. However, he did not render legal advice to Mrs. Hadley because he needed further information which she failed to give to him. While this may have been an unfortunate omission on her part, it is unfair to penalize Mr. Hadley for it. We find that Mr. Hadley demonstrated his good faith, candor and sincerity in his dealings with Mrs. Hadley. His actions were consistent with those required in a relationship of trust and confidence.

Mrs. Hadley now urges this court to disregard the agreements because they were drafted with death rather than dissolution of marriage in mind. We are unsympathetic to this plea. In addition to Mr. Hadley's reliance upon these agreements, creditors, financial institutions, the Internal Revenue Service and other third parties had also relied upon them. Furthermore, Mrs. Hadley specifically incorporated the property status agreements into her will, executed on September 10, 1974. As we find no fraud or overreaching, we will not allow Mrs. Hadley to choose at this late date the purposes for which these agreements may be used.

The appellant next alleges that the trial court violated *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972), by failing to characterize each of the party's property as separate or community. While the trial court did not list each of the properties in the findings, assigning them separate or community status, it did adopt the characterization of the

properties as contained in the property status agreements discussed above. These agreements included nearly all of the Hadley assets.

In *Baker v. Baker, supra,* we held that the court must have in mind the character of property as community or separate. *See also Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966); *Shaffer v. Shaffer,* 43 Wn.2d 629, 262 P.2d 763 (1953). The trial court found, and it is not challenged, that the assets were traced by a certified public accountant prior to the signing of the agreement. Those findings were before the court. Testimony was taken from Mr. Durwood Alkire, another certified public accountant, who independently traced the Hadley assets. Additionally, Mr. Hadley testified as to the source and evolution of every major asset before the court. The testimony as to the character of each of the assets was compatible with the characterization of the property made in the property status agreements. In that community property is not required to be divided equally but rather equitably, we find that the strict particularity in listing each asset urged by the appellant to be unnecessary. In so holding, we in no way intend to alter the standards for tracing set forth in *Berol v. Berol,* 37 Wn.2d 380, 223 P.2d 1055 (1950). Furthermore, as was stated in *Baker v. Baker, supra* at 745–46, "Characterization of the property, however, is not necessarily controlling; the ultimate question being whether the final division of the property is fair, just and equitable under all the circumstances." We are satisfied the trial court met this test.

The appellant next assigns error to the trial court's alleged failure to assign a value to each of the Hadley assets in the findings and conclusions. The court made a finding of fact that the 1975 financial statement prepared by a certified public accountant fairly reflects the present value of the assets before the court. The court found that those corporations which are not described in the statement have no significant value. The appellant makes no allegation to the contrary. Of those items omitted from the 1975 financial statement, there is testimony in the record giving an exact

valuation of each, with the exception of Mrs. Hadley's personal effects. However, her personal effects were of relatively insignificant value compared with the other assets and were not taken into account in the property division.

The purpose of requiring that the trial court set forth its valuation of the property in a dissolution action is to provide the appellate court with an opportunity to discover whether there has been an abuse of discretion. In this case, unlike *Wold v. Wold,* 7 Wn. App. 872, 503 P.2d 118 (1972), which is cited by appellant, the 1975 financial statement and the statement of facts contain a valuation of each of the significant items of property. We are able to determine the value of the entire estate and the value of the awards to each of the spouses. Consequently, we find that this assignment of error is without merit.

The appellant next alleges that the trial court erred in failing to distribute the tax reserve fund to either party. As a result of this error, she contends, the spouses become tenants in common as to the undistributed property. *Pittman v. Pittman,* 64 Wn.2d 735, 393 P.2d 957 (1964). In making the property distribution, the court divided the Hadley net worth, not including the tax reserve, between the parties. Mrs. Hadley received certain property and maintenance and Mr. Hadley received "all other separate and community property." Regardless of the court's theory of distribution, we find that the award to Mr. Hadley of the remainder of the property is sufficiently broad to encompass the tax reserve.

The appellant contends that the trial court erred by substituting future maintenance payments for Mrs. Hadley's community property interest. The court awarded Mrs. Hadley property valued at $545,000 and $4,000 per month maintenance. It imprecisely referred to this amount as her community property share. In actuality, the court had determined that the property owned by the community was minimal; $545,000 was considerably more than half of the community property. The major assets had been traced as Mr. Hadley's separate property. Therefore, $545,000 alone

constituted a generous award of the community property. The additional future payments greatly exceed her community property share.

■ We have held in the past that the use of the terms alimony, maintenance payment, or property award does not necessarily require that the award be so treated. There is no magic in the use of these terms. *Thompson v. Thompson,* 82 Wn.2d 352, 510 P.2d 827 (1973); *Walls v. Walls,* 179 Wash. 440, 38 P.2d 205 (1934). Our concern is with the fairness of the award as determined by those factors set out in RCW 26.09.080 (property) and RCW 26.09-.090 (maintenance). The trial court properly considered those factors. Its award of property was carefully thought out to meet the needs of both parties. We are satisfied that the label attached to Mrs. Hadley's award does not invalidate what is a fair and equitable decree.

The appellant contends that the trial court erred in accepting the valuations of the Pacific Building and the Denny Building as stated in the 1975 financial statement. The financial statement used those values as set by the county assessor. The appellant contends that the 9 percent capitalization rate, rather than the assessed value, is the proper valuation.

■ We are unsympathetic to the appellant's contentions for several reasons. First, appellant offered no testimony regarding the fair market value of the buildings in question. As we have held in the past, property valuations which are not supported by the record will not be considered by the court on appeal. *American State Bank v. Butts,* 111 Wash. 612, 191 P. 754, 17 A.L.R. 168 (1920); *see Startin v. Startin,* 4 Wn. App. 339, 481 P.2d 452 (1971). The only evidence of the value of the buildings other than that in the financial statement was produced by cross–examining Mr. Hadley's accountant. The accountant was asked to compute the value of the buildings using a 9 percent capitalization rate. There was no determination that this was a proper way to determine fair market value. Secondly, Mrs. Hadley was asked by interrogatory prior to trial if she accepted the

valuations assigned in the 1974 financial statement to the Hadley assets. The 1974 statement contained the same values for the Pacific Building and the Denny Building as did the 1975 statement. Mrs. Hadley replied in the affirmative. Having no evidence to the contrary, the trial court did not err in accepting the valuations of the properties included in the 1975 financial statement.

Mr. Hadley has cross–appealed the trial court's award of $25,000 attorney's fees to the wife, arguing that Mrs. Hadley is able to pay these fees out of her maintenance payments. The trial court properly considered Mrs. Hadley's needs in determining the amount of her maintenance payments. However, it did not allocate funds to her for the payment of attorney's fees. At the time of the litigation, Mrs. Hadley had no separate property. Accordingly, we find that there was no abuse of discretion in awarding attorney's fees to the wife. See *Fite v. Fite,* 3 Wn. App. 726, 479 P.2d 560 (1970).

The judgment is affirmed on the appeal and the cross–appeal.

WRIGHT, C.J., and ROSELLINI, HAMILTON, and BRACHTENBACH, JJ., concur.

HOROWITZ, J. (dissenting)—The wife (Claudette Hadley), who is now totally disabled, invokes the jurisdiction of this court to review the property distribution provisions of the dissolution decree. The ultimate contention made by the wife, to use the words of *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 409, 433 P.2d 209 (1967), a divorce case, is: "the husband came out of the marriage with too great a share and the wife too little."

The parties recognize we cannot disturb the trial court's decree unless the evidence in the case shows the court's "discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander,* 80 Wn.2d 293, 298, 494 P.2d 208 (1972). Having reviewed the record, the briefs and the

contentions of able counsel for each of the parties, and with all due respect to the trial court, I am compelled to concluded this court's intervention is necessary to achieve a "just and equitable" disposition of the property rights of the parties. RCW 26.09.080–.090.

The wife's assignments of error on her appeal concern: (1) the community and separate status of the individual properties of the parties and the trial court's awareness of their correct characterization; (2) the individual values of those properties; and (3) the propriety of a 10–year maintenance award in favor of the wife in lieu of a corresponding property award. Each issue will be separately discussed.

### THE STATUS OF COMMUNITY AND SEPARATE PROPERTIES

RCW 26.09.080 describes the factors the court must consider in the disposition of marital property upon dissolution of the marriage. That statute provides:

> the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage; and
> (4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

RCW 26.09.090 deals with maintenance orders the court may enter for either spouse and the factors to be considered.

RCW 26.09.080 implicitly requires the trial court be aware of the separate and community nature of the marital property as well as the "extent" thereof of each. Even prior to RCW 26.09.080, *Baker v. Baker,* 80 Wn.2d 736, 745, 498 P.2d 315 (1972) made it clear that:

The court, in a divorce action, must have in mind the correct character and status of the property as community or separate before any theory of division is ordered.

*See also Pollock v. Pollock,* 7 Wn. App. 394, 499 P.2d 231 (1972). If the court fails to bear in mind the true and correct character of the property being divided, its division is invalid. *Pollock v. Pollock, supra* at 405. *DeRuwe v. DeRuwe, supra* at 408, quoted approvingly in *Pollock* on page 399:

we will, if shown some abuse of discretion, correct the decree to ameliorate or remove if possible the inequities fostered by it.

The findings and conclusions of the trial court are very general in nature. It is extremely difficult, if not impossible, to determine specifically—apart from the property status agreements describing certain property—just what assets the court considered to be community property. Had the trial court entered findings in the detail set forth in the wife's proposed findings and conclusions, it would have been possible to determine whether the court bore in mind the correct status of the community and separate properties of the parties and the extent thereof.

The husband, to support his claim the trial court bore in mind the correct status of the properties, relies upon certain property status agreements entered into by the husband and wife between November 26, 1965, and March 28, 1974. These the trial court held to be valid. Findings of fact Nos. 13–16; conclusion of law No. 7. The findings also adopt the husband's 1975 financial statement as fairly reflecting the "present value of the assets before the court." Finding of fact No. 19.

For reasons next stated, however, I believe the property status agreements are invalid and therefore cannot be used to support the husband's claim the court bore in mind the correct status of the properties described therein.

Most of the estate of the parties was acquired after marriage. At marriage, the husband's net worth, using his own figures, was approximately $2,300,000. According to his

December 31, 1974, financial statement, the total value of the assets of himself and his wife had grown to $15,987,009. According to his December 31, 1975, financial statement, relied on by him and by the trial court in ordering a division of the properties, the estimated market value of the assets of the parties separate and community had decreased to $11,741,219. For the first time, there appeared on his financial statements a reserve for taxes in the sum of $3,516,333. This reserve was to provide for capital gain taxes in the event all assets were liquidated. By adding the tax reserve to other deductions to meet a possible contingent tax liability, there remained a net worth of $5,860,555.

In the absence of the property status agreements, it would have been necessary for the husband to prove de novo the separate status of the properties acquired after marriage and the increase in that value to overcome the presumption that all property acquired during marriage is presumptively community property. *DeRuwe v. DeRuwe, supra; In re Estate of Allen,* 54 Wn.2d 616, 622, 343 P.2d 867 (1959); *Berol v. Berol,* 37 Wn.2d 380, 381–82, 223 P.2d 1055 (1950); *In re Estate of Dougherty,* 27 Wn.2d 11, 176 P.2d 335 (1947); *Pollock v. Pollock,* 7 Wn. App. 394, 499 P.2d 231 (1972).

To overcome the presumption, the husband, *inter alia,* would have had to comply with at least two basic rules:

1. The tracing rule described in *Berol v. Berol, supra* at 381–82:

> The burden rests upon the spouse asserting the separate character of the property acquired by purchase during the marriage status to establish his or her claim by clear and satisfactory evidence. *E. I. DuPont de Nemours & Co. v. Garrison,* 13 Wn. (2d) 170, 174, 124 P. (2d) 939, and cases cited therein. The requirement of clear and satisfactory evidence is not met by the mere self–serving declaration of the spouse claiming the property in question that he acquired it from separate funds and a showing that separate funds were available for that purpose. Separate funds used for such a purpose should be traced with some degree of particularity.

(*See also In re Estate of Allen,* 54 Wn.2d 616, 343 P.2d 867 (1959) and Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 745 (1974)); and

2. The necessity of proving a contemporaneous segregation of income between the community and separate estate. *In re Estate of Smith,* 73 Wn.2d 629, 630–31, 440 P.2d 179 (1968). When separate property is combined with community property in the acquisition or production of assets, that segregation may take the form of a reasonable salary for the husband's post–marital business services. *Pollock v. Pollock, supra* at 400–01, states:

> Following marriage, plaintiff continued to manage his separate property successfully. He derived substantial income from the combined use of his separate property and his services. However, the community was entitled to the economic benefit of his services. The rule is that if plaintiff seeks to retain the separate character of income derived from a combination of his separate business and his post–marital personal services with respect thereto, he is required to make a contemporaneous segregation of the income so derived as between the community and his separate estate. This can be accomplished by the allocation to the community of what in effect would be a reasonable salary for his services. The allocation in the nature of a salary is then considered community income, and the balance of his income remains his separate property.

In the instant case, the husband's individual services after marriage in causing the growth in the value of his separate property and in accumulating additional separate property was outstanding. The community, however, was entitled to the benefit of his post–marital services to his separate property in the form of a reasonable salary. The evidence shows the husband received a salary for his services from Hadley Properties, Inc., a management corporation he wholly controlled. The evidence also shows he received no salary for his personal services to other corporations and projects he considered to be his separate property—corporations and projects, to some of which at least, his skills, abilities and services greatly contributed in

bringing about a substantial increase in the value of his separate property.

I have found no evidence in this record—indeed the briefs point to none—that the salary which the husband himself fixed and controlled was reasonable for the services he rendered for the benefit of the separate property. There is also no finding the salary he received was reasonable or that it was reasonable for the purpose mentioned. It is true that there is a conclusion of law that "the community has been fairly compensated by substantial salaries and otherwise for all efforts expended by Richard on behalf of his separate property." Conclusion of law No. 4. However, this conclusion must be supported by the findings of fact. The only references in the findings of fact show that the salary received by the husband "averaged over $57,000 for each year of marriage . . . and [were] expended for community purposes." Finding of fact No. 9. Finding of fact No. 10 states "during marriage Richard transferred separate funds in excess of $68,000 to separate accounts, and these sums were expended for community purposes. In addition, Richard expended approximately $235,000 from his separate property accounts for community purposes."

These findings are so general in character that it is virtually impossible to determine just what their relationship is to the problem of showing a contemporaneous segregation of separate and community income in connection with the services rendered by the husband in the management of his properties and of the community properties and to the reasonableness of his salary. Using averages for each year of the marriage does not show what contemporaneous segregation of income was made in any particular year with respect to any particular property at the time the property was acquired or at the time the services were rendered with respect to that property or the reasonableness of the salary. Stating that the husband transferred separate funds to community accounts and expended a given sum from his separate property accounts for community purposes does not necessarily show any contemporaneous segregation of

income or the reasonableness of his salary. For all the findings show, the transfer of the separate funds for the benefit of the community might well have been voluntary payments having no relationship to a reasonable compensation for his earning abilities he used in augmenting his separate estate. The burden of proving the separate character of the properties claimed by the husband was upon him and that burden had to be established "by clear and convincing evidence." *See National Bank of Commerce v. Green,* 1 Wn. App. 713, 717, 463 P.2d 187 (1969).

If the salary was unreasonably low, and if to this is added the necessity of proving by "clear and satisfactory evidence" with "some degree of particularity" the separate status of the properties acquired or augmented in value after marriage (*see Berol v. Berol, supra*), the husband and the court would have been faced with serious difficulties in determining the separate character of properties otherwise presumed to have been acquired as community property.

It is therefore evident the husband felt the need for his own benefit of obtaining property status agreements in order to fix the separate and community character of the properties and thus avoid difficult problems of proof. Because of the vital importance of the property status agreements in determining the separate and community character of the properties of the parties, it is essential the question of the validity of the agreements be considered in light of applicable legal principles.

The relationship between a husband and wife after marriage is not and is not expected to be an arm's length relationship. That relationship is one of trust and confidence in which the managing husband stands in a fiduciary relationship to his wife. *See Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972) and *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954), later discussed.

The factual background evidencing important aspects of that relationship between the parties is correctly set forth in paragraph 10 of the wife's proposed findings dealing with

the property status agreements. As appears from that paragraph, a property status agreement dated October 14, 1973, exhibit No. 6, an addendum to that agreement dated October 14, 1973, exhibit No. 5, and an amendment dated March 28, 1974, exhibit No. 4, were in force at the time this action was commenced. These agreements were relied upon by the trial court to determine the separate and community property status of the properties described in the agreements. These agreements were prepared at the husband's request by attorneys who represented him in his business matters and in the personal affairs of the parties.

These agreements were prepared for the purpose of estate planning to minimize estate taxes in the event of the wife's death prior to that of the husband. Each of the three agreements was signed by the wife at the residence of the parties in the presence of the husband, who urged her to sign these documents and indeed made it quite plain he wanted her to sign them.[1] The agreements do not recite any express consideration. The agreements provided for a continued reduction in the amount of the community property interests of Mrs. Hadley and provided for a continuing increase in the amount of the separate property interests of the husband.

The wife did not have knowledge of all the material facts upon which to make a finding the agreements were fraudulent in fact or that the wife was overreached in fact in connection with the execution of the agreements. She contends, however, that the failure of the husband to discharge his fiduciary duty of disclosure had the same effect.

The wife's proposed findings point out the 1973 agreement and the 1973 addendum were examined by Mr. Wheeler Grey, a Seattle attorney, prior to the time she signed the agreements. Mr. Grey, however, refused to render a legal opinion to her concerning the validity, fairness or reasonableness of the agreements because he lacked the information necessary to determine whether they were

[1]*See* Statement of facts 183, lines 5–8.

fair or correct. The wife did not consult with any attorney about the 1974 amendment. At the time these agreements were signed, Mrs. Hadley, because of her affliction with multiple sclerosis, was dependent upon her husband to see to her physical well–being and to see to it that she received adequate medical treatment. None of the property status agreements were entered into in contemplation of dissolution proceedings.

The basic question relates to the burden of proof concerning the validity of the agreements and the discharge of that burden in light of the *Friedlander* and *Hamlin* cases next discussed.

The burden of proof is upon the husband to prove the validity of the agreements because of the confidential or fiduciary relationship in which he stands to his wife. This rule is made clear in *Friedlander v. Friedlander, supra,* and *Hamlin v. Merlino,* supra, cases which the majority opinion holds contain principles "applicable here." *Cf.* Statement of facts 1116.

In *Friedlander,* a prenuptial agreement which essentially provided that each of the parties' separate property would retain that character and in the event of divorce neither party would make claim to the other's separate property, was held to be void. The court stated at page 300, quoting 2 A. Lindey, *Separation Agreements and Ante–Nuptial Contracts* § 90, at 84 (rev. ed. 1967):

> where the provision made for the wife is disproportionate to the property of the husband, a presumption arises that the contract was procured by deliberate concealment of the amount and value of the husband's property; and the husband or those claiming under him against the wife have the burden of showing that she had full knowledge of the value of her interest in the husband's property, or that the circumstances were such that she reasonably should have had such knowledge.

Applying this rule, the court stated on pages 302 and 303:

> This brings us to the nature of the good faith disclosure required by a prenuptial agreement. To render such

an agreement valid there must be a fair and reasonable provision for the wife, or, in the absence thereof there must be a full, frank disclosure of the future husband's property and his worth. *Juhasz v. Juhasz, supra* [134 Ohio St. 257, 16 N.E.2d 328, 117 A.L.R. 993 (1938)]; *Warner v. Warner, supra* [235 Ill. 448, 85 N.E. 630 (1908)]; 2 A. Lindey, § 90, at 36–37. This is not to say that she must know the *exact* financial status of his resources. However, she must at least have a full and fair disclosure of all material facts relating to the amount, character and value of the property involved so that she will not be prejudiced by the lack of information, but can intelligently determine whether she desires to enter the prenuptial contract. *Juhasz v. Juhasz, supra; Warner v. Warner, supra;* 2 A. Lindey, § 90, at 44; 41 Am. Jur. 2d *Husband and Wife* §§ 313–14 (1968). Viewed in the light of this test, we hold that plaintiff failed to sustain his burden of proof.

Further, the prospective spouse must sign the agreement freely and voluntarily on *independent advice* with full knowledge of her rights. *Hamlin v. Merlino, supra* at 864; 2 A. Lindey, § 90, at 36–38. It is clear that defendant did not have such advice prior to signing the agreement.

*Hamlin* and *Friedlander* each point out that parties to a nuptial agreement do not deal with each other at arm's length. The relationship is one of trust and confidence which imposes a fiduciary duty upon one to the other, and this includes the duty of fair and full disclosure.

In the instant case, the husband failed to comply with the requirement in *Friedlander* on page 302 that the wife

must at least have a full and fair disclosure of all material facts relating to the amount, character and value of the property involved so that she will not be prejudiced by the lack of information, but can intelligently determine whether she desires to enter the . . . contract.

There was no showing that Mrs. Hadley knew the agreements would be used not only for estate planning purposes but would, or could, be used against her in the event of divorce—the very use to which the agreements were put in the instant case.

The complexities of the transactions involved and the need for information is emphasized by the fact that if Mr. Wheeler Grey, an able member of the Seattle bar, found himself unable to advise Mrs. Hadley concerning the wisdom of signing the agreements because he lacked the necessary information and Mrs. Hadley didn't have that information, how much less qualified was Mrs. Hadley to make an informed decision.

The majority opinion argues the wife should have obtained the necessary material information she needed before she signed the agreements. It fairly appears from the record she faced an insistent husband who appeared impatient at the delay in his wife's signing. *See* Statement of facts 178. She apparently decided to sign, trusting her husband, upon whom she relied, to protect her interests. This was not a new experience for her. Thus, at one point in her testimony, she testified with reference to signing legal papers presented to her by her husband, in response to a question asked her on cross–examination:

Q. Would you have signed anything if you didn't understand what it meant? . . .
A. If Richard said that this was to be signed, his word was all I needed.

Statement of facts 912–13.

The husband then contends that the wife ratified these agreements in her wills executed June 17, 1974, and September 10, 1974. However, when these wills were executed she was no better informed concerning the facts she should have been told about than she was at the time she executed the property status agreements. Under these circumstances, there can be no ratification by one who lacks full knowledge of material facts, which it is the duty of the husband to disclose. *See Wickre v. Allen,* 58 Wn.2d 770, 364 P.2d 911 (1961); *Wilson v. Pearce,* 57 Wn.2d 44, 355 P.2d 154 (1960); *Power v. Esarey,* 37 Wn.2d 407, 224 P.2d 323 (1950).

Mr. Hadley further argues his wife is estopped to rely upon the invalidity of the agreements because after she executed them they were relied upon by himself and third

persons. The rights of third persons are not before this court and just what justifiable reliance was had by these people is not in the record. Even if, however, an estoppel could be urged in specific cases as to third persons, the estoppel would be inapplicable as between the husband and wife. A husband under fiduciary obligation to his wife to make a full and fair disclosure cannot, by obtaining her signatures to these property status agreements without complying with his duty of disclosure, obtain a right to treat them as valid on the ground that he relied upon them. This is not a case of justifiable reliance. *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 280–81, 461 P.2d 538 (1969). A signature obtained under these circumstances as between husband and wife permits the wife to contend the agreements are void.

Finding of fact No. 13 upholds the validity of the property status agreements. That finding states "the parties knowledgeably and voluntarily executed a series of agreements which identify their property and fix the community and separate status and character of that property . . . Richard and Claudette discussed these agreements, and each was explained to her . . . Claudette was kept informed of business developments by Richard . . . The 1973 agreement and the addendum were based upon a study conducted by a certified public accountant and an attorney who traced the then assets to the respective sources and characterized the then assets in accordance with the character of the source asset. The agreement reflects the results of the study and the addendum recites its conclusions." The finding further refers to "Claudette [engaging] Wheeler Grey, an attorney at law, to examine the 1973 agreement and addendum." The finding continues: "Grey told Claudette he needed more information in order to render a legal opinion concerning these documents. Claudette did not provide Grey with more information, nor did she request Grey to obtain any additional information." Finding of fact No. 14 again states "these agreements were

knowledgeably and voluntarily signed by Richard and Claudette . . ."

The difficulty with these findings is that they ignore the significance of the husband's duty to disclose "all material facts relating to the amount, character and value of the property involved . . ." Nowhere is it found in clear and direct terms that such a disclosure was made. The statement that the agreements were "explained to her" provides no details and thereby ignores the sufficiency of the explanation, whatever that might have been and there is no finding on this crucial question. So far as the study conducted by the certified public accountant, even he testified that as to one asset, he relied upon the property status agreement which he treated as valid. There is no claim that in doing so, he undertook to find out just what representations were made to the wife as required by the rule of disclosure under Washington law. The husband cannot convert his duty to disclose into a duty on the part of the wife to find out when he fails to disclose to his wife what is his duty to disclose. There was no knowledgeable and intelligent waiver by the wife of the husband's duty of disclosure. Findings Nos. 13 and 14 are not supported by substantial evidence in material respects.

If the property status agreements are void, then the findings cannot be used for the purpose of demonstrating the court was aware of the correct status of the properties of the parties described in those agreements. Nevertheless, the court relied upon these agreements, holding them valid, without giving proper effect to the husband's duty of disclosure. The court also orally explained during the proceedings on the wife's motion for a new trial that it had specifically addressed the question of what was community and what was separate. He stated, "I thought I did when I said I upheld the agreement. The agreement spelled out what the properties were." Statement of facts 1087, line 24. Under the circumstances, reliance upon void agreements to determine the separate and community character of the property was improper and requires a new trial for the

purpose of enabling a determination to be made, whether, independently of the property status agreements, there is substantial evidence to show that the court was aware of the correct nature and extent of the community and separate property he divided.

## The Value of the Properties

The court must consider the value of each item of separate and community property which the court must divide in a "just and equitable" fashion. *See Wold v. Wold,* 7 Wn. App. 872, 874–75, 878, 503 P.2d 118 (1972). The court relied upon Mr. Hadley's 1975 financial statement which purported to state, *inter alia,* an "Estimated Market Value" for each of the properties described therein. The statement was received over objection of the wife's attorneys. The values estimated in most cases were based upon a capitalization of net income method, using a 9 percent capitalization rate. This method is illustrated in the 1975 Hadley financial statement, petitioner's exhibit No. 137, schedule J, pages 62–63. *See* Statement of facts 599. The usual methods of establishing fair market value were not used. Whatever deficiencies existed in this method of proving fair cash market value were accentuated in at least two instances when assessed values for real property taxation purposes were used instead of using the capitalization method. Assessed values are not admissible as evidence of fair cash market value. *In re Medina,* 69 Wn.2d 574, 418 P.2d 1020 (1966); *American State Bank v. Butts,* 111 Wash. 612, 191 P. 754, 17 A.L.R. 168 (1920); *In re Northlake Ave.,* 96 Wash. 344, 165 P. 113 (1917).

There was evidence as the brief of appellant, page 45, points out, that had the 9 percent capitalization method relied on to value other Hadley properties been used, the two properties in which assessed values were used would have resulted in a value higher by approximately $1,500,000. For all the record shows, the trial court might well have increased the wife's distributive share had it considered that the husband had understated the value of his

separate property by $1,500,000. This matter needs to be further considered on retrial. Since no question has been raised by the parties concerning the propriety of the use of the capitalization method with respect to other properties contained in the 1975 financial statement, it is unnecessary to comment further about the propriety of that method in fixing values.

A second matter showing an understatement of the value of the parties' property is shown by the use of two tax reserves. The first was a $3,516,333 tax reserve set forth for the first time in the 1975 financial statement. This tax reserve was based on the amount of unrealized appreciation at capital gain rates should the property of the parties be liquidated. Note No. 5 to the financial statement further shows "The actual tax could vary according to the actual method of liquidation adopted."

This tax reserve dealt with a contingent liability for taxes. Whether that liability would ever come into existence would depend upon whether and to what extent properties would be liquidated. The possibility is always there but there is no evidence the contingent liability for which the tax reserve has been set up will ever come into being. Under the court's decree, the benefits derived from the use of the tax reserve as a method of reducing Mr. Hadley's net worth is awarded to Mr. Hadley. What happens if the contingent liability never comes into being or does not come into being in the amount for which the tax reserve is set up? If the tax reserve is overstated or is merely a paper entry in its entirety, then the value of the assets in the 1975 financial statement has been substantially understated.

Moreover, there is a second tax reserve, *i.e.*, one in a corporation in which the parties owned a 90 percent interest. The reserve was set up because if the leasehold income were to be sold, there would be an income tax effect. Here, too, there is no evidence that the leasehold will be sold in the foreseeable future so that the tax reserve may well be unnecessary. If unnecessary, the fair value of the building involved has been understated by 90 percent of $765,250.

However, to the extent the tax reserve will not be needed, the benefit of the assets against which the tax reserve has been set up go to Mr. Hadley.

No doubt in arriving at the fair value of the properties involved it is necessary to consider the possibility of sale or liquidation and the tax impact of sale or liquidation, but the possibility must be real, not conjectural. The evidence does not establish that the tax reserves are for any real rather than conjectural contingency. Upon remand for the purpose of determining the separate and community property status of the parties, it will also be necessary to determine what effect should be given to these reserves in arriving at the fair value of the properties distributable.

### THE MAINTENANCE AWARD

The trial court sought to make an equal distribution of $2,050,812, or $1,025,406 each. As he explained:

> Now, if we take the $1,025,406 that goes to Mrs. Hadley, and if we take the $1,025,406 that goes to Mr. Hadley as his part of the community property, and we add these two figures together, that's $2,050,812 . . .

Instead of awarding Mrs. Hadley $1,025,406 in property, the trial court included in that award, in lieu of property distribution, $480,000 in the form of a maintenance award, payable without interest over a period of 10 years. It explained:

> So I am going to award $4,000 per month for her support for the next ten years. Now, if she lives ten years, I am sure the arithmetic is quite simple on this, this would amount to $48,000 a year, which in ten years would be $480,000.
>
> I did this, gentlemen, rather than making a distribution of $480,000 from the assets, because I feel that there is no reason to believe that Mr. Hadley, having been successful, can't be successful in the future, and he expressed his intent that he wanted her to be properly cared for for the rest of her life.

Obviously, the award of maintenance in lieu of property does not result in equal distribution of the amounts the

court intended to distribute equally. Unlike a property distribution, a maintenance award is terminable at the wife's death; the award does not have a present value of $480,000 at the time of the decree as distinguished from a property award because it is payable without interest in installments over a period of 10 years and the present value of the award is a discounted figure. Moreover, the award cannot be bequeathed because it terminates upon the wife's death, whereas property can be bequeathed and remains in the ownership of the wife's estate, notwithstanding her death. Further, the maintenance payments are includable in the wife's income for federal income tax purposes in the year in which the installments are received. I.R.C. § 71. Still further, the payments are deductible by the husband in computing his federal income in the year of payment. I.R.C. § 215.

Moreover, if $4,000 a month is necessary to meet the wife's needs (there is no claim to the contrary), her failure to get that amount by reason of the tax liabilities described impairs her ability to meet her needs in view of her serious afflictions. Moreover, if, as a result of substituting the maintenance award for a property award, Mrs. Hadley gets less than one–half of her community share, she also becomes liable for income tax at capital gain rates attributable to community property awarded to the husband. *United States v. Davis,* 370 U.S. 65, 8 L. Ed. 2d 335, 82 S. Ct. 1190, *rehearing denied,* 371 U.S. 854, 9 L. Ed. 2d 92, 83 S. Ct. 14 (1962). It is unnecessary to note other differences. It is not surprising, therefore, that in *Dreyer v. Dreyer,* 10 Wn. App. 624, 627, 519 P.2d 12 (1974), the court noted: "The time has passed when you can say alimony may be given merely in lieu of any property division."

It is true at one point the court noted that one of the buildings distributed to Mrs. Hadley as part of her one–half share of $2,050,812, had been treated as the husband's separate property. Ultimately, however, he lumped the items separate and community together by making up the $2,050,812, thereby indicating he wanted both parties to

each receive an equal amount, namely, $1,025,406. In distributing that amount to the defendant wife, he erroneously included the maintenance award of $480,000 as if it were the equivalent of a property distribution. *See* Statement of facts 1092–093. He should not have done so.

CONCLUDING OBSERVATIONS

The trial court's decree requires revision because of the trial court's failure to bear in mind the correct status of the community and separate property of the parties and the correct values of the properties involved. Without reliance on the property status agreements, the court's findings fail to designate the items of property which are separate and the items which are community and their respective true values. When a court has made no such characterization, it cannot be determined that the court bore in mind the correct characterization and values of the properties. The cause must be reversed to enable such characterization and values to be determined. I am unable on this record to make that characterization and determination myself. It would be better in my view for the trial court to do so on the basis of an adequate record in which the property status agreements will not be treated as valid.

Moreover, the failure of the court to make a property award instead of a maintenance award of $480,000 is error.

It is true, the husband's affairs are such that the decree entered by the court should take into account his need for additional financing so that division of assets may not adversely affect his ability to obtain such financing. The maintenance award is also implicit recognition of the court's confidence in Mr. Hadley's future substantial earning ability. However, equity and justice require that the court, with such help as the parties may give, explore other possibilities that will protect the husband and, at the same time, not be unfair to the wife. *See Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972); *Lynch v. Lynch,* 38 Wn.2d 437, 229 P.2d 885 (1951); *Spencer v. Spencer,* 24 Wn.2d 574, 166 P.2d 845 (1946); *Halverson v. Halverson,* 137

Wash. 619, 243 P. 644 (1926). Thus, for example, the court may award a compensatory judgment to the wife. *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 433 P.2d 209 (1967); and *Pollock v. Pollock,* 7 Wn. App. 394, 499 P.2d 231 (1972).

I would reverse for further proceedings consistent with this opinion.

STAFFORD and UTTER, JJ., CONCUR WITH HOROWITZ, J.

Reconsideration denied September 2, 1977.